MONTEFUSCO EXCAVATING & CONTRACTING CO., INC., PLAINTIFF-APPELLANT, v. COUNTY OF MIDDLESEX, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 21, 1979—Decided June 15, 1979.

Before Judges CONFORD, PRESSLER and KING.

Mr. *Bartholomew G. Babiak* argued the cause for appellant (*Messrs. Braun & Braun,* attorneys; *Mr. Philip Braun* on the brief).

Mr. *John H. Schmidt, Jr.,* argued the cause for respondent United States Fidelity and Guaranty Company (*Messrs. Lindabury, McCormick & Estabrook,* attorneys).

The opinion of the court was delivered by

PRESSLER, J. A. D. ■ The question before us is whether the exercise of the right of subrogation by a surety on a public works contract who has been called upon to pay mechanics' and materialmen's claims against the contractor-principal is subject to the fee claim of the attorney for the contractor-principal whose legal efforts produced the subrogatable fund.

In 1974 plaintiff Montefusco Excavating & Contracting Co., Inc. (Montefusco) contracted with the County of Middlesex for the installation by it of sanitary sewer and water services required as part of a county park development. A dispute arose between them as to whether certain excavation work, soil placement and stone supplies were to be specially compensated for. As a result of this dispute plaintiff did not complete its contractual undertaking. Consequently, its surety company, United States Fidelity and Guaranty Company (USF&G), which had issued a payment and performance bond covering this contract pursuant to *N. J. S. A.* 2A:44–143 *et seq.,* was called upon to and did in fact pay all outstanding claims of plaintiff's subcontractors, mechanics and materialmen, and such other claims as were incurred by the county in the completion of the work. In the meantime

Montefusco sued the county for its alleged contractual breach in respect of the claimed extras, and the county counterclaimed. Ultimately, that litigation was terminated with the aid of the trial judge by a settlement agreement whereby the county undertook to pay plaintiff $9,500 in full satisfaction of all claims. It is the disposition of the fund produced by this settlement which is in issue here. USF&G asserts it by way of its common-law right of subrogation. Plaintiff's attorneys claim that they are entitled to be first paid out of the fund for their efforts in having created it. The question is simply whether or not the fund is chargeable with plaintiff's counsel fee before being turned over to the surety. The trial court held that it is not. We reverse.

We are satisfied that the rule now prevailing in this jurisdiction requires that a person seeking a right of subrogation in respect of the proceeds of litigation conducted by the subrogor is chargeable with the subrogor's legal fees incurred in obtaining that recovery or, if the right of subrogation extends to less than the full recovery, with a *pro rata* portion of the legal fees. This rule was unequivocally and unqualifiedly adopted by the Supreme Court in *Hedgebeth v. Medford*, 74 *N. J.* 360, 368–369 (1977), in which it declared that "in this State a right of subrogation carries with it the equitable requirement of paying a pro rata share of counsel fees." The rule rests upon the fundamental and obvious unfairness of permitting the subrogee to itself avoid the incurring of legal expenses in prosecuting the claim while at the same time obtaining the full benefits of that prosecution. As a matter of simple equity, then, if a subrogatable fund was produced by litigation, the ultimate beneficiary of the fund, the subrogee, should contribute to the cost of its production. As noted in the seminal opinion in *Klacik v. Kovacs*, 111 *N. J. Super.* 307, 312 (App. Div. 1970), certif. den., 57 *N. J.* 237 (1970), a case involving contractual subrogation:

> To establish an artificial rule which would provide an insurer with the right to sit back and permit its insured to proceed with an action, expecting to share in the avails of that proceeding without the burden of any of the expense, occurs to us to be anomalous.

And in *Hedgebeth v. Medford, supra,* 74 *N. J.* at 369, a case involving the statutory right of subrogation of the State itself, the court again articulated the basis of the rule as "the equitable principle that a carrier should not be entitled to enjoy the fruits of the assured's judgment against the tortfeasor without contributing in any way to the costs or burden of litigating that claim." See also *First Federal S. & L. Ass'n v. Nieder,* 163 *N. J. Super.* 308, 313–314 (App. Div. 1978).

We regard the general rule as fully applicable here. Clearly, had USF&G intervened in this action or itself instituted an action to recover the sum which the county owed Montefusco on this project and had thereby reduced its total bond obligation, it would itself have incurred appropriate counsel fees. Its choice to permit Montefusco to carry the litigation burden should not relieve it of obligation for the litigation expense when it claims the entire litigation benefit.[1]

USF&G contends that the general rule is not here applicable because the fund here in question is a trust fund and as such is not subject to the attorney's charging lien vouchsafed by *N. J. S. A.* 2A:13–5. It relies on *N. J. S. A.* 2A:44–148, which provided in full that

> All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such

---

[1] We note USF&G's apparent recognition of its interest in assisting plaintiff in its litigation against the County. We have been advised by counsel that the surety company had in this litigation assumed the obligation to pay the expenses of Montefusco's proposed expert witness.

person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid.

In our view USF&G's reading of this statute is too broad. While we agree that its effect is to impress a trust on all payments made by a public body to its contractor in respect of a public works contract, nevertheless we regard that trust as limited both as to time and as to beneficiaries. The express beneficiaries of the trust are materialmen and laborers and the trust in their favor endures only as long as they remain unpaid. See *National Surety Corp. v. Barth,* 11 *N. J.* 506 (1953). The surety on a payment and performance bond is not itself within the statutory class of beneficiaries. Nor is there anything here to suggest that there remain any unpaid claims of members of that class. The position of USF&G here is simply that of any surety who has a right to reimbursement from the principal after having been called upon, in accordance with a contractual obligation supported by consideration, to pay the debts of the principal and who seeks vindication of that right by the subrogation procedure available to it. See, *e. g., Restatement, Restitution,* § 162 at 653–661 (1937). We perceive no reason why the statutory designation of the fund here in question as a trust fund for materialmen and laborers should, *vis-à-vis* the surety company, affect the general rule requiring the subrogee to bear the litigation expenses incurred in creating the fund. In this context, since the surety is not itself a direct beneficiary, the controlling circumstance is not the nature of the fund in respect of other classes of claimants but rather the manner in which the fund was created. Clearly, if the claimant here were not the surety but rather a direct member of the statutorily protected class, a genuine priority question would arise in respect of the competing rights of a beneficiary of the trust and the attorney otherwise entitled to assert a charging

lien. But that is not the situation here. There is here only a straightforward and unexceptional subrogation claim by an insurance company who has been paid to bear the risk out of which the subrogation right eventually arose and who was free to but chose not to directly undertake the litigation by which the realized risk is to be ultimately reduced.

USF&G relies on not only the trust fund theory but also on the asserted appositeness of *Columbia Ins. Co. v. Artale*, 112 *N. J. Eq.* 505 (Ch. 1933), aff'd 114 *N. J. Eq.* 268 (E. & A. 1933), in which the right of a third-party claimant to a litigation recovery was held to be superior to the claim of the producing attorney. That holding, however, did not, by its express terms, involve a subrogation situation, 112 *N. J. Eq.* at 507–508, which in any event is governed by *Hedgebeth v. Medford, supra.* See also *First Federal S. & L. Ass'n v. Nieder, supra.*

We reverse and remand to the trial court for further proceedings consistent herewith. We do not retain jurisdiction.