IN THE MATTER OF THE ESTATE OF
LISA JACKSON, A MINOR CHILD, APPELLANT.

Argued February 20, 1979—Decided May 11, 1979.

Mr. *Joseph Maran, Jr.* argued the cause for appellant (*Messrs. Zarin* and *Maran,* attorneys).

*Ms. Susan J. Barone* argued the cause for respondent, Essex County Welfare Board (*Mr. William J. Tamburri,* attorney; *Ms. Barone* and *Mr. Joseph P. Brennan, Jr.* on the briefs).

*Ms. Andrea M. Silkowitz,* Deputy Attorney General, argued the cause for *amicus curiae* Commissioner, Department of Human Services (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. David P. Schneider,* Deputy Attorney General on the brief).

*Mr. Patrick C. English* submitted a brief on behalf of *amicus curiae* American Civil Liberties Union of New Jersey (*Messrs. Lordi, Imperial & Dines,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. This appeal poses the question of whether a county welfare board which has furnished financial aid on behalf of a dependent child pursuant to an Act concerning assistance for dependent children etc., *N. J. S. A.* 44:10–1 *et seq.,* can obtain reimbursement from a tort recovery by the child for personal injuries under an agreement to repay signed by the child's mother. Resolution of the question involves, *inter alia,* the interpretation of the statute under which the assistance was furnished, *N. J. S. A.* 44:10–1 *et seq.,* particularly section 4(a) which deals with repayment of assistance. The Act was passed to take advantage of federal funding available under the program of Aid to Families with Dependent Children (AFDC) established by 42 *U. S. C. A.* § 601 *et seq.* See *Essex Cty. Welf. Bd. v. Dept. of Inst. & Agencies,* 75 *N. J.* 232 (1978).

Lisa Jackson, the infant here involved, was three years old when on May 4, 1972 she suffered severe burns on her left leg after it became wedged between a wall and a steampipe in the Newark Housing Authority apartment where she lived with her mother Wanda Jackson. The child was hospitalized for 35 days as a result of her injuries and underwent skin grafts on her left leg. At the time, she was a dependent child within the meaning of the Act and her mother was receiving benefits on her behalf.

The record does not indicate when suit was started by the mother individually and on behalf of the child for damages. However, a written "Agreement to Repay" dated August 10, 1973 was executed by Wanda Jackson referring to the anticipated receipt of funds by virtue of a claim against the Newark Housing Authority. The agreement stated that it was for the purpose of receiving Assistance for Dependent Children under *N. J. S. A.* 44:10–1 *et seq.* and included a

promise "to repay the County Welfare Board for that portion of any assistance so granted which may be paid during the period pending my receipt" of the anticipated funds.

The suit involving the burn injuries was tried in December 1974 and, based on a jury verdict, judgment dated December 18, 1974 was entered in favor of Lisa Jackson, the infant, for $20,000 plus interest and in favor of Wanda Jackson, her mother, for $8,626 plus interest.

An order for distribution of judgment was signed on April 25, 1975 fixing the amount of counsel fees and directing that $15,274, the net balance of the award to Lisa Jackson, be deposited in a guardianship bank account. The order also provided that outstanding medical liens amounting to $5,629 were to be satisfied out of the net balance ($6.050.18) of the award to Wanda Jackson.

On July 13, 1976 the Essex County Welfare Board filed a complaint alleging the execution of the written agreement to repay assistance furnished Lisa Jackson out of her claim against the Housing Authority. It also alleged "settlement" of the claim and that there had been received on behalf of Lisa Jackson a net sum of $15,274 which had been placed in an interest-bearing bank account. The complaint mistakenly indicated that the accident happened in May 1973 (it occurred on May 4, 1972) and alleged that the Welfare Board was entitled to reimbursement for assistance furnished on behalf of the child from May 1973 to date.

On November 1, 1976, the adjourned return day of an Order to Show Cause entered on the complaint, the trial court ruled that the Welfare Board was entitled to reimbursement for the assistance furnished on behalf of Lisa Jackson. Repayment, calculated to run from May 1973 and amounting to $2,833.86, was ordered, payment to be made from the bank funds on deposit for the benefit of Lisa Jackson. The Appellate Division, in an unreported opinion, affirmed the decision of the trial court. An appeal on behalf of the child was filed with this Court as a matter of right. *R.* 2:2–1(a)(1).

*N. J. S. A.* 44:10-4(a), the statutory section herein involved, provided as follows at the time the agreement to repay was executed and the order for repayment entered:[1]

(a) Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare board may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted. Upon any refusal to make repayment in accordance with such promise, the county welfare board may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor.

[L. 1962, c. 80, § 1]

It is argued on behalf of Lisa Jackson that an award received by an injured party for compensation for pain and suffering and permanent disability is not assignable and that *N. J. S. A.* 44:10-4, as applied to personal injury awards, is unconstitutional. Neither contention has merit for reasons hereinafter given.

An agreement to repay obtained pursuant to section 4(a) is not an assignment as such. It can be enforced only by action taken under the laws of this State at which time the welfare board would have the burden of establishing the statutory requisites and the recipient would have the opportunity to present available defenses. The real issue is whether section 4(a), in implementing the AFDC program, can provide for a county welfare board to secure repayment of assistance payments made on behalf of a dependent child out of the child's recovery in tort for personal injuries.

---

[1]The statutory section has been amended in several respects by L. 1977, c. 127.

States which elect to participate in the AFDC program established by Congress, and thereby share in the federal funding made available, must comply with the requirements set forth in 42 *U. S. C. A.* § 602(a)(1)–(29) in their administration of the program. Thus, a state in determining an applicant's financial need must "take into consideration any other income and resources of any child or relative claiming aid to families with dependent children * * *." 42 *U. S. C. A.* § 602(a)(7). The establishment of state recovery procedures is anticipated by the provision for a reduction in the state's periodic grant by a "sum equivalent to the *pro rata* share * * * of the net amount recovered during any prior quarter by the State or any political subdivision thereof * * *." 42 *U. S. C. A.* § 603(b)(2)(B). Accordingly, funds actually recovered by the State are divided among the federal, state and county governments in proportion to their contribution to the AFDC grant. We are satisfied that the reimbursement policy set forth in the federal statute is broad enough to accommodate a tort recovery by the infant for personal injuries.

This is the background against which New Jersey adopted its Act concerning assistance for dependent children. It, therefore, included a provision authorizing a county welfare board to require as a condition of eligibility for AFDC benefits that a child or parent, awaiting resolution and payment of a pending claim legally or equitably owned, "execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted." See *N. J. S. A.* 44:10–4(a).[2]

The statutory language does not specifically refer to a child's pending tort claim for personal injuries. However, in *Francis v. Harris,* 100 *N. J. Super.* 313 (Law Div.), aff'd o. b. 103 *N. J. Super.* 440 (App. Div. 1968), certif. den. 53

[2]The 1977 amendment to section 4(a), *inter alia*, added the language "from the date of entitlement to such payment" after the word "granted."

*N. J.* 227 (1969), it was held that such a cause of action was a claim or interest within the meaning of section 4(a) and that a welfare board was entitled to repayment of assistance payments made on behalf of the child out of the personal injury recovery. The court noted that since the original enactment of section 4(a) by L. 1959, c. 86 it has always been administratively construed to apply to personal injury claims. 100 *N. J. Super.* at 318–320.

We agree with the *Francis* holding. The Assistance Standards Handbook (ASH), *N. J. A. C.* 10 :82–1.1 *et seq.,* promulgated by the Department of Human Services, Division of Public Welfare, specifically includes a suit or claim arising out of an accident as a resource. *N. J. A. C.* 10 :82–3.7. The question is one of social policy. It can be argued that a child's recovery in tort for personal injuries, particularly where the injury is of a permanent nature, should not be considered a resource either for determining eligibility for AFDC assistance, or for repayment of assistance furnished during the pendency of the claim.

However, section 4(a) on its face clearly would subject an infant's tort recovery to its repayment provisions as it has been so construed administratively and judicially. In the light of such construction, it is significant that the Legislature, when it amended the Act in 1977, including section 4(a), did not see fit to exclude a claim for personal injuries as a source of repayment.

Other jurisdictions have enacted statutory provisions which call for reimbursement of AFDC payments made on behalf of a dependent child out of a tort recovery by the child for personal injuries. These provisions have generally been upheld by the courts. *Francis v. Harris, supra,* 100 *N. J. Super.* at 320–323. See annotation, "Personal injury recovery as affecting eligibility for, or duty to reimburse public welfare assistance," 80 *A. L. R.* 3d 772 (1977), especially Part III "Reimbursement from recovery in personal injury action." *Id.* at 790–823.

■ It is contended on behalf of Lisa Jackson that the reimbursement provision set forth in section 4(a) of the New Jersey statute is unconstitutional in that (1) in authorizing a parent to execute a written promise to repay, it permits an unappointed guardian to deprive a child of property rights without due process of law; (2) it discriminates against children and minors and thereby denies equal protection; (3) it is arbitrary and coercive since one must either sign the reimbursement agreement or lose the welfare assistance; and (4) recourse to a personal injury award for reimbursement of AFDC payments is violative of due process and amounts to the taking of private property for public use without just compensation.

These contentions lack merit. It would unduly burden the administration of the AFDC program to require a guardianship proceeding before the signing of a written agreement to repay AFDC assistance. Aside from the fact that a parent is the natural guardian of the child, such an agreement is not self-executing and can be enforced only after a court hearing and court approval at which time the child's interests will be fully protected. Additionally, a parent has the right to challenge on behalf of her child the request that an Agreement to Repay be signed. Through the fair hearing process, the parent may make all appropriate arguments against the Welfare Board's request for execution of the agreement. *N. J. A. C.* 10:81–6.1 *et seq.* During the pendency of the fair hearing and until a decision is made, benefits must be provided the child. *N. J. A. C.* 10:81–6.5(a).

The contention that the provision for reimbursement discriminates against children and minors is difficult to comprehend since the argument does not go beyond the mere assertion. If it means that children receiving welfare assistance are singled out for the requirement of reimbursement, whereas other welfare recipients are not, the argument is factually inaccurate. The welfare laws contain numerous provisions for the repayment or reimbursement, directly or

indirectly, of welfare benefits received. For example, see *N. J. S. A.* 44:1–30.2; *N. J. S. A.* 44:1–95; *N. J. S. A.* 44:4–91.1; *N. J. S. A.* 44:5–19.1 to –19.8; *N. J. S. A.* 44:7–14; *N. J. S. A.* 44:8–114.

It has been asserted that, as a matter of social policy, repayment of welfare assistance benefits should not be required because it makes it more difficult for welfare recipients to escape from the cycle of poverty and diminishes incentive to improve their lot. However, the question is one of legislative policy, and, as heretofore noted, our Legislature has expressed its intent in clear and unequivocal terms.

The further contention that section 4(a) is coercive and arbitrary in requiring the execution of an agreement to repay as a condition of receiving assistance under the Act is also based on social considerations. Granting that due process and equal protection extend to the receipt of welfare assistance, there are competing interests involved, and as long as the enactment strikes a fair societal balance, and a rational basis exists for the legislation, it must be upheld. The costs of welfare assistance are substantial. A state, in administering its AFDC program, cannot be faulted for husbanding its welfare resources by requiring reimbursement from those who become able to repay.

The final constitutional argument is that an award for injuries, particularly those of a permanent nature, is so personal a recovery, given in substitution for the impairment of one's physical condition, that it should be immune from the recoupment provisions of section 4(a) as a matter of due process.

This contention was considered and rejected in *Francis v. Harris, supra*. Other courts have reached the same conclusion. See *Langs v. Harder*, 165 *Conn.* 490, 338 *A.* 2d 458 (1973), *cert.* den. 416 *U. S.* 994, 94 *S. Ct.* 2409, 40 *L. Ed.* 2d 774 (1974); *Snell v. Wyman*, 281 *F. Supp.* 853 (S. D. N. Y. 1968), aff'd 393 *U. S.* 323, 89 *S. Ct.* 553, 21 *L. Ed.* 2d 511 (1969). Again it is a matter of social policy and a balancing of conflicting societal interests. As previously

noted, a state in administering its AFDC program cannot be faulted for requiring reimbursement from those who become able to repay. No good reason appears why a recovery for personal injuries, except for that portion identified for medical expenses, should be immunized from such a legislative determination.

■ We uphold the legality of the agreement to repay and the right of the Welfare Board, in its enforcement of such agreement, to have reimbursement of welfare assistance furnished a dependent child out of the child's tort recovery for personal injuries. However, there are certain limitations on the exercise of this right. In the instant case although the agreement to repay was signed by the mother on August 10, 1973, the trial court, in ordering repayment out of the tort recovery, included the amount of welfare assistance furnished from May 1973, the alleged date of the accident. This was error as the statute in effect when the agreement was signed and the order for repayment entered provided only that the written promise to repay be for "the amount of assistance to be granted."[3] It is clear that the reimbursement provision of the Act as it then existed, extended only to the amount of assistance granted from the date of the agreement to repay. For this reason the order for repayment must be vacated and the matter remanded to the trial court for recalculation of the amount to be repaid.

■ It is also argued on behalf of Lisa Jackson that part of the judgment in her favor was for future medical expenses. If any part of her award was for future medical expenses, those funds would have to be reserved for the purpose for which they were awarded, and would not be available for repayment of assistance granted. The Attorney General of New Jersey, representing the Commissioner, Department of Human Services, *amicus curiae,* concedes as much and notes

---

[3]As heretofore noted, the 1977 amendment to the Act has made a substantial change in this provision.

that current Division of Public Welfare policy, as proposed in 10 *N. J. R.* 434 (Oct. 5, 1978) (*N. J. A. C.* 10:81–3.41 (a)(2)), would exempt from recoupment identifiable future medical expenses which are included in an award.

The brief filed with this Court on behalf of Lisa Jackson states that her treating physician "indicated that Lisa would need additional surgery as she grew because the keloid formations would restrict the movement of her knee." It is not clear whether counsel was representing that the doctor so testified at the trial of the personal injury claim. Unfortunately, the trial record in that case has not been made available and it is impossible to determine whether the question of future medical expenses was presented for the jury's consideration. The verdict and judgment therein are in general terms and the order for distribution refers only to outstanding medical liens amounting to $5,629 which were ordered to be paid out of the net award to Wanda Jackson, the mother.

The contention that part of Lisa's award was for future medical expenses is, therefore, unsupported by any competent proof in the present record. Ordinarily, it would be rejected for that reason. However, since we are remanding the matter to the trial court for recalculation of the amount to be repaid the Welfare Board and, since the source of the repayment is funds belonging to a dependent child who admittedly suffered serious and permanent injury, the trial court, in those special circumstances, should hold a hearing on the present need for future medical treatment and the cost thereof. To the extent that any such expenses are identified and established, an appropriate portion of Lisa's funds should be segregated for that purpose and rendered immune from the Welfare Board's claim.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.