IN THE MATTER OF THE GUARDIANSHIP OF JOSE JONES.

Superior Court of New Jersey
Appellate Division

Submitted September 18, 1979—Decided October 1, 1979.

Before Judges LORA, ANTELL and PRESSLER.

*Mr. Gerald P. Burke* attorney for appellant Camden County Welfare Board.

*Messrs. Steinberg, Steinberg & Ginsberg* attorneys for cross-appellant Janet Jones (*Mr. Isaiah Steinberg* on the brief).

*Mr. John J. Degnan,* Attorney General of New Jersey, attorney for intervenor-appellant, Department of Human Services, Division of Public Welfare (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Ms. Andrea M. Silkowitz,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PRESSLER, J. A. D.

This is a welfare reimbursement case.

In February 1972 Jose Jones, then six years old and receiving welfare assistance from the Camden County Welfare Board (Board), was injured in an automobile accident. Upon the Board's request, his mother Janet Jones signed an agreement in June 1974 undertaking to repay the Board in the amount of its assistance out of the prospective proceeds of the child's still pending personal injury claim. The claim was settled by friendly judgment in December 1976 for a gross recovery of $25,000. The balance of some $13,000 remaining after payment of medical expenses, counsel fees and costs was deposited in a trust account with the Camden County Surrogate. The Board thereupon petitioned the court pursuant to *N.J.S.A.* 44:10–4(a) for an

order directing that it be reimbursed out of the trust account in the amount of assistance paid by it for Jose from and after the date of the accident.[1] The petition was resisted on various statutory and constitutional grounds by his mother and guardian, who argued in the alternative that if any reimbursement at all were to be allowed it should be limited to the assistance period commencing on December 16, 1976, the date of judicial approval of the settlement, and should, furthermore, be subject to charge for a pro rata share of counsel fees incurred by her and Jose in the negligence litigation.

The trial judge entered judgment in favor of the Board, allowing it reimbursement for assistance paid from the date of the friendly judgment and charging that amount with a pro rata share of counsel fees. The Board and the Division of Public Welfare, which intervened in this appeal by our leave, appeal both from the counsel fee provision of the order and from its directive respecting the commencement date for reimbursable assistance. Jose's guardian cross-appeals, continuing to assert the exemption of the personal injury claim proceeds from the Board's statutory and contractual right to reimbursement.

We deal with the cross-appeal first. Subsequent to the filing of this appeal the New Jersey Supreme Court decided *In re Estate of Jackson*, 79 *N.J.* 517 (1979). We are satisfied that all of the guardian's challenges to the general validity and

---

[1] We note that while the language of the reimbursement agreement purports to suggest an undertaking by Mrs. Jones to repay the Board out of the claim proceeds for assistance rendered not only to Jose and also to herself and her other three children, it was the apparent understanding of all parties that only Jose's assistance was reimbursable and the Board's petition sought reimbursement only to that extent. The parties themselves have not raised any issue directed to the overbroad language of the agreement and we are satisfied to construe its scope in accordance both with statutory limitation and the Board's own practical construction consistent therewith.

enforceability of such a reimbursement agreement as is here involved were carefully considered and rejected by the Supreme Court. More specifically, the Supreme Court in *Jackson* held that the Legislature did not intend to exempt personal injury recoveries from the scope of the applicable statute, *N.J.S.A.* 44:10–4(a), and further, that the statute is not unconstitutional by reason of its authorization to a parent to execute the repayment promise on behalf of his child or by reason of the coerciveness implicit in a Board's right to terminate welfare assistance unless the agreement is signed.

■ With respect to the two issues raised on the agencies' appeal, we are satisfied and indeed, the agencies so stipulate, that *Jackson* is dispositive of the question of the amount of assistance reimbursable. It is the holding of *Jackson* that in respect of repayment agreements which, as here, were executed prior to the amendment of *N.J.S.A.* 44:10–4(a) by *L.*1977, c. 127, the reimbursement right of the Board extends to welfare assistance paid from and after the date of the agreement. Thus, the trial judge erred in prospectively applying the contrary provision of the 1977 amendment and ordering reimbursement from and after the date of the friendly judgment. We, therefore, reverse that portion of the judgment and remand to the trial court for recalculation based on the date the agreement was signed by the guardian.

■ We are, finally, constrained to reverse that portion of the judgment charging the reimbursement with a pro rata share of counsel fees. The trial court in so ordering relied exclusively on *Hedgebeth v. Medford*, 74 *N.J.* 360 (1977). The decision in *Hedgebeth* held that the exercise of the State's statutory right of reimbursement by way of subrogation in respect of Medicaid payments made by it to a recipient who subsequently succeeded in recovering the cost of those same medical expenses from a third-party tortfeasor was subject to a pro rata share of the counsel fees incurred by the recipient in prosecuting his claim

against the tortfeasor. In our view, that holding is not applicable here. The rationale of *Hedgebeth*, while assuredly resting on principles of fundamental equity, nevertheless was directly predicated on the subrogation nature of the State's reimbursement right there involved. Clearly, however, not every right to reimbursement derives from subrogation. The singular characteristics of subrogation distinguishing it from other types of reimbursement rights are, first, the identity of the subject of the obligation owed by the subrogee to the subrogor and that owed by the third party to the subrogor and, second, the fact that as between the third party and the subrogee, it is the third party who is primarily liable to the subrogor because it was the conduct of the third party *vis-à-vis* the subrogor which triggered not only his own obligation to him but the subrogee's as well. See *Restatement, Restitution*, § 162 at 653–661 (1973); *Hedgebeth v. Medford, supra*, 74 *N.J.* at 370–371.

Thus, illustratively, in the Medicaid situation the subrogor-recipient injured in an accident caused by a tortfeasor has the unqualified right to recover, among other items of damage, the medical expenses incurred by him in respect of the injury. If he is eligible, he also has a right to have those medical expenses paid by the State-subrogee under the Medicaid program. There is thus an identity of the subject matter of the obligation owed to the subrogor both by the subrogee and the third party as a result of the third party's tort, and it is the identity of that obligation and the third party's primary responsibility therefor which underlay the direct right of action against the third party which is accorded a subrogee who has already discharged that obligation by paying the subrogor. Thus, the direct right of action for the same debt is enjoyed both by the subrogor and the subrogee who has already paid him. If the direct action against the third party is brought by the subrogee, obviously the subrogee will be required to incur the litigation expense. Where the action, however, is brought by the subrogor, it is brought wholly or in part for the ultimate benefit of the subrogee since the

subrogee will be entitled to be reimbursed out of the subrogor's recovery in the amount which he, the subrogee, has already paid to the subrogor on account of the third party's primary obligation. That the subrogee in this circumstance should share the burden of the legal expenses incurred by the subrogor in producing the recovery is simply a matter of basic fairness, and it is the appreciation of that fundamental fairness which dictated the principle articulated in *Hedgebeth*, namely, that "In this State a right of subrogation carries with it the equitable requirement of paying a pro rata share of counsel fees." 74 *N.J.* at 368–369. As this court further explained in *Montefusco Excava. & Contract. v. Middlesex Cty.*, 169 *N.J.Super.* 109 (App.Div.1979):

> The rule rests upon the fundamental and obvious unfairness of permitting the subrogee to itself avoid the incurring of legal expenses in prosecuting the claim while at the same time obtaining the full benefits of that prosecution. As a matter of simple equity, then, if a subrogatable fund was produced by litigation, the ultimate beneficiary of the fund, the subrogee, should contribute to the cost of its production. [at 112.]

The foregoing considerations, moreover, have underlain all of the decisions in this state charging counsel fees to the subrogee seeking reimbursement from the subrogor out of the proceeds of the subrogor's recovery against the primarily liable third party. See, *e. g., Klacek v. Kovacs*, 111 *N.J.Super.* 307, 312 (App.Div. 1970), certif. den. 57 *N.J.* 237 (1970); *First Federal S. & L. Ass'n v. Nieder*, 163 *N.J.Super.* 308, 313–314 (App.Div.1978).

▮ Explication of these principles demonstrates their inapplicability here. There is patently nothing in the interrelationship among the Welfare Board, the welfare recipient and the tortfeasor bespeaking a subrogation situation. The Welfare Board has no derivative right of direct action against the tortfeasor. The obligation, moreover, of the Welfare Board to render subsistence assistance to an indigent is conceptually and legally totally unrelated to and independent of the obligation of a tortfeasor to make his victim whole. The only factual relation-

ship between these obligations is the holding of *In re Estate of Jackson, supra,* which in effect confirms the status of a recovery from the tortfeasor on a personal injury claim as an asset calculable by the Welfare Board in determining the degree of the recipient's indigency and need. If the personal injury recovery predated the commencement of welfare assistance, the net and unexpended balance then remaining after payment of counsel fees and other legal expenses would clearly be a factor to be properly considered by the Welfare Board in determining an applicant's eligibility and need in the same manner as is any other non-exempt asset owned by the applicant, including any other non-exempt asset acquired by litigation whose expenses have already been borne in full by the applicant. See *N.J.A.C.* 10:81–3.5(b)(4); 10:82–3.2(b)(10); 10:82–3.7(4). We see no fundamental difference where the recovery is obtained after welfare assistance has commenced and no reason why, in both situations, the amount of the asset it represents should not be the same, namely, the net recovery.

The judgment appealed from is affirmed in part and reversed in part. We remand to the trial court for recalculation of the reimbursement amount to which the Welfare Board is entitled and without deduction therefrom on account of counsel fees.