173 N.J. Super. 290 (1980)
414 A.2d 269
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RESORTS INTERNATIONAL HOTEL, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1980.
Decided April 8, 1980.
*292 Before Judges CRANE, MILMED and KING.
Miriam Kahn Brody, Deputy Attorney General, argued the cause for appellant (John J. Degnan, Attorney General of New Jersey, attorney; Edwin H. Stern and Jeffrey S. Katz, Deputy Attorneys General, on the brief).
Patrick T. McGahn, Jr., argued the cause for respondent (McGahn & Friss, attorneys; Solomon Friss on the brief).
The opinion of the court was delivered by KING, J.A.D.
This is an appeal from a dismissal of a complaint charging Resorts International Hotel, Inc. (Resorts), the first casino hotel licensed in New Jersey, with violations of the Child Labor Laws, N.J.S.A. 34:2-21.2 et seq. Final judgment dismissing the 20-count complaint was entered in the Atlantic City Municipal Court on February 22, 1979. The complaint alleged violations in employing four minors, ages 13 to 17, who performed in the casino's night-club show as acrobatic dancers between May 27 through September 4, 1978. A violation of the Child Labor Laws is a criminal misdemeanor punishable by a fine of up to $500 and a jail term of up to 90 days. N.J.S.A. 34:2-21.19 and 21.63. Defendant waived, in writing, indictment and trial by jury, thereby conferring jurisdiction on the municipal court. See N.J.S.A. 2A:8-22.
Defendant Resorts was the holder of a temporary casino license, N.J.S.A. 5:12-95.1, and Class II and Class III alcoholic beverage licenses, N.J.S.A. 5:12-103. The Casino Control Act L. 1977, c. 110, effective June 2, 1977, provided for the pervasive regulation of every aspect, including employment, of legalized casino gambling, which form of gambling was not permitted in this State until November 2, 1976, when the voters adopted a *293 constitutional amendment so authorizing in Atlantic City only. N.J.Const. (1947), Art. IV, § 7, par. 2(D). The Casino Control Commission had issued casino hotel employee licenses, also called work permits, for the four minors involved, pursuant to the Casino Control Act, N.J.S.A. 5:12-91. However, Resorts made no attempt to comply with the requirements of the Child Labor Laws, N.J.S.A. 34:2-21.1 et seq., insofar as they related to these young performers. Resorts contended at the municipal court level that the Casino Control Law preempted the Child Labor Laws in respect of any child employee whom the Commission was empowered to license. Alternatively, Resorts contended that any violation of the Child Labor Laws was innocent, inadvertent and without the mens rea requisite to sustain a criminal violation.
At the conclusion of the testimony offered by both sides the municipal judge dismissed the complaint on the ground that the court lacked jurisdiction. See R. 3:10-4. Defendant Resorts probably should have raised the objection on a motion before trial. R. 3:10-3. The municipal court judge concluded that "the broad, sweeping supremacy and preemptive policy statements in the Casino Control Act mandates that N.J.S.A. 34:2-21, et seq., [the Child Labor Laws] is [sic] thus superseded in its application to minors only to the extent and circumstances where they are employed by a casino hotel." After holding that the regulation of minors in casino hotel employment was preempted by the Casino Control Act, the judge further ruled that a specific criminal intent was necessary to support a finding of guilt. The judge concluded that since full disclosure of the minors' age and other circumstances of employment had been made to the Commission, the failure to obtain theatrical work permits or other employment certificates required by N.J.S.A. 34:2-21.1 et seq. was "inadvertent and innocent." The judge concluded his written opinion by stating: "We find that the charges encompassed in the complaints are subject to the exclusive jurisdiction of the Casino Control Commission. This Court is therefore without *294 jurisdiction to act in the premises and the charges must therefore be dismissed." No general finding of guilt or innocence was rendered by the municipal court judge.

I
The State filed a "notice of motion for leave to appeal" to the Law Division on March 9, 1979. Following legal argument based on the record in the municipal court, the Law Division judge affirmed the dismissal on the grounds that (1) the appeal was out of time and (2) the principle of double jeopardy applied as a bar to the appeal. Additionally, the Law Division judge expressed his opinion that the Casino Control Act did not preempt the Child Labor Laws.
We agree with the Law Division judge's conclusion that the State's appeal or "motion for leave to appeal" was filed on the 11th day, March 9, 1979, after entry of verdict.[1] If a ten-day limit applies, the State's appeal was untimely and the Law Division was powerless to extend the time period. R. 1:3-4(c). Unfortunately, our Rules of Court did not specify the time limit for appeals from final pretrial or posttrial orders by courts of limited criminal jurisdiction dismissing complaints until R. 3:24 was amended, effective September 10, 1979. New subsection (b) of R. 3:24 specifically permits such appeals; new subsection (c) thereof specifies that any appeal thereunder must be taken within ten days after the entry of such order. See Pressler, Current N.J. Court Rules, Comment R. 3:24. Prior to the amendment of R. 3:24, effective September 10, 1979, the State, by its terms, was permitted to appeal only interlocutory orders *295 entered by courts of limited criminal jurisdiction within ten days of entry of judgment. Defendants were permitted to appeal convictions within ten days of entry of judgment, R. 3:23-2. Therefore, no specific rule permitted the State to appeal from a municipal court's dismissal of a complaint on jurisdictional grounds or specified the time in which such appeal should be taken prior to the 1979 amendment.
However, R. 2:3-1 stated that
"in any criminal action the State may appeal or, where appropriate, seek leave to appeal pursuant to R. 2:5-6(a): ... (b) to the appropriate appellate court from: (1) a judgment of the trial court entered before or after trial dismissing an indictment, accusation or complaint ..."
R. 2:5-6(a) permitted appeals from interlocutory orders to be taken within 15 days. Arguably, one may contend that since no specific rule existed before September 10, 1979 spelling out a time limit of ten days on the State's right to appeal from a posttrial order of dismissal of a complaint and since such ruling was not based on the guilt or innocence of the defendant, that order partook of an interlocutory character thereby permitting an appeal to be taken within 15 days pursuant to R. 2:3-1 and R. 2:5-6(a). The problem has, in any event, been resolved by the September 10, 1979 amendment. In this case we prefer to entertain the State's appeal on the merits because of the public law issue presented and therefore resolve the doubt in favor of the State's right to appeal from an order disposing of a criminal complaint by dismissal on jurisdictional grounds within 15 days from the date of entry of judgment. See Bates v. Valley Fair Enterprises, Inc., 86 N.J. Super. 1, 5-6 (App.Div. 1964); In re Syby, 66 N.J. Super. 460, 464-465 (App.Div. 1961).

II
We find no basis in the Casino Control Law to justify the municipal court judge's finding of preemption. There is no *296 actual conflict between the statutory schemes. Several principles of statutory construction are implicated. Implied repealers are strongly disfavored and will be judicially recognized only when there is clear and compelling legislative intent evinced by the subsequent enactment. "The test is whether the two statutes are inconsistent or repugnant." Brewer v. Porch, 53 N.J. 167, 173 (1969); Tennessee Valley Auth. v. Hill, 437 U.S. 153, 189-191, 98 S.Ct. 2279, 2299-3000, 57 L.Ed.2d 117 (1978). The Child Labor Laws have been in force in this State in some form since at least 1904. We will not lightly conclude that such salutary social legislation has been cast aside by the advent of casino gambling.
The preemption provision of the Casino Control Act, N.J.S.A. 5:12-133(b), states:
If any provision of this act is inconsistent with, in conflict with, or contrary to any other provision of law, such provision of this act shall prevail over such other provision and such other provision shall be deemed to be amended, superseded or repealed to the extent of such inconsistency or conflict. Notwithstanding the provisions of any other law to the contrary, no local government unit of this State may enact or enforce any ordinance or resolution conflicting with any provision of this act or with any policy of this act or with any policy of this State expressed or implied herein, whether by exclusion or inclusion. The commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act.
The policy underlying the enactment of the Casino Control Act is extensively iterated in N.J.S.A. 5:12-1. Of particular note is subsection 1(b)(13), which says:
It is in the public interest that the institution of licensed casino establishments in New Jersey be strictly regulated and controlled pursuant to the above findings and pursuant to the provisions of this act, which provisions are designed to engender and maintain public confidence and trust in the regulation of the licensed enterprises....
*297 This case thus involves a general preemptive statute regulating gambling, N.J.S.A. 5:12-133(b), and an extensive, highly specific statute regulating child labor, containing at least 64 sections, N.J.S.A. 34:2-21.1 et seq.[2] There are statutory provisions in the Casino Control Act concerning employment in general. N.J.S.A. 5:12-89, 5:12-90 and 5:12-91, providing for the licensing of key casino employees, casino employees and casino hotel employees, are very stringent. They are in general stricter than employment criteria for other occupations, save the licensed professions. While there is preemption of general employment standards through these sections, no preemption is present with regard to the narrow area of concern, i.e., health, safety and education involved in the employment of minors. No provision in the Casino Control Act sets special qualifications for employment of minors, nor have any such regulations been promulgated to date by the Casino Control Commission. Under any known principle of statutory construction, we think it clear that the general preemption section of the Casino Control Act may not be interpreted as repealing the very specific provisions of the Child Labor Laws where the Casino Control Act lacks any specific reference to the employment of minors. Indeed, the only reference we find to the employment of minors in the Casino Control Act is in N.J.S.A. 5:12-103(e) which provides that
Notwithstanding any provision to the contrary, the commission may promulgate any regulations and special rulings and findings as may be necessary for the proper enforcement, regulation, and control of alcoholic beverages in casino hotels when the commission finds that the uniqueness of casino operations and the public interest require that such regulations, rulings, and findings are appropriate. Regulations of the commission may include but are not limited to: ... employment of aliens and minors. .. .
*298 The Commission has not to date enacted any regulations relating to the employment of minors under this or any other section of the act.
Additionally, during the pendency of this appeal the Casino Control Commission proposed and ultimately adopted the following regulations involving the Child Labor Laws:

N.J.A.C. 19:40-2.1 Violation of child labor law; offense
Pursuant to the authority vested in the Commission by the Casino Control Act, any violation of the Child Labor Law, N.J.S.A. 34:2-21.1 et seq., by a casino licensee shall also constitute an offense, which may be prosecuted before the Commission in accordance with the regulations of the Commission, N.J.A.C. 19:42-6.1 et seq.

N.J.A.C. 19:40-2.2 Violation of child labor law; sanctions
Upon a finding by the Commission that a licensee has committed acts which violate the Child Labor Law, N.J.S.A. 34:2-21.1 et seq., the Commission shall, pursuant to Section 129 of the Casino Control Act, impose such sanctions as it deems reasonable and necessary to effectuate the policies of the Child Labor Law and the Casino Control Act.
They were first published at 11 N.J.R. 418 on August 9, 1979 and were thereafter filed with the Secretary of State and adopted on September 26, 1979. Without reaching the merits of the Commission's attempt to arrogate concurrent jurisdiction with the courts over child labor violations to its control, the adoption of these regulations is additional evidence against a legislative design to exempt the highly sensitive casino industry from the Child Labor Laws. In interpreting the meaning of a statute, this court may place considerable weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70 (1978); See also, Heir v. Degnan, 82 N.J. 109, 122 (1980). The Casino Control Commission, by the adoption of these regulations, has concluded that no good industry reason exists to exempt casinos from the Child Labor Laws. We see no good reason for exemption either.

*299 III
We reject defendant's contention that double jeopardy precludes the State's appeal. A reversal and remand on this appeal will not necessitate a retrial. Both sides presented their full proofs and rested before the municipal court judge deliberated on the procedural question and ordered a dismissal of the complaint for the legal reasons ascribed. No retrial is necessitated by our remand. The municipal court judge need only hear pertinent legal argument and enter a judgment based on the evidence already presented. The New Jersey and federal constitutional protections against double jeopardy have been described as coextensive by our Supreme Court. State v. Lynch, 79 N.J. 327, 340 (1979); State v. Rechtschaffer, 70 N.J. 395, 404 (1976). Where a retrial is unnecessary and only entry of the judgment is required, double jeopardy considerations are not implicated. United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Lee v. United States, 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977); State v. Kleinwaks, 68 N.J. 328 (1975).

IV
Because this matter must be remanded for entry of a judgment, we comment on the municipal court judge's statement, unessential to his disposition, that Resorts, through its agents, lacked the specific criminal intent necessary to support a finding of guilt. This specific intent generates the element of a guilty mind, the mens rea. The penal statute itself contains no requirement that an employer's violation be willful, intentional or animated by a specific evil or criminal intent. N.J.S.A. 34:2-21.9; N.J.S.A. 34:2-21.63. Strict criminal liability, without regard to any specific criminal intent or guilty mind, has been the rule in respect of so-called regulatory or public welfare criminal statutes which have proliferated in this country since the industrial revolution where no custodial sentence is imposed. See 1 Wharton, Criminal Law (14 ed. 1978), § 23 at 100-111; e. *300 g., Overland Cotton Mill Co. v. People, 32 Colo. 263, 75 P. 924 (Sup.Ct. 1904); see, also, Justice Jackson's classic historical analysis of the development of these statutes in Morissette v. United States, 342 U.S. 246, 253-256, 72 S.Ct. 240, 244-46, 96 L.Ed. 288 (1952); Commonwealth v. Koczwara, 397 Pa. 575, 580, 155 A.2d 825, 827-828 (Sup.Ct. 1959); 21 Am.Jur.2d, Criminal Law, §§ 89-91 at 169-173.
Reversed and remanded; jurisdiction is not retained.
NOTES
[1] The trial judge's written opinion was filed with the clerk of the municipal court and mailed to the parties on February 22. It was stamped "received" by the Trial Section of the Division of Criminal Justice on February 23, 1979. Allowance of three days for service by mail under R. 1:3-3 would extend the time to appeal until ten days from February 26 because February 25 was a Sunday. R. 1:3-1. Ten days from February 26 was March 8, the last day to appeal.
[2] The Child Labor Laws closely regulate age, hours of labor, rest intervals, working conditions, hazardous exposures and also very specifically regulate theatrical employment by persons under 16. L. 1977, c. 430, N.J.S.A. 34:2-21.58, et seq.