GEMMA FALGIATORE, PLAINTIFF, v. COUNTY OF ATLANTIC, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF WELFARE, DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided May 28, 1980.

*Alan M. Lands* for plaintiff (*Tort, Jacobs, Gross, Rosenberger & Todd*, attorneys).

*Marjorie W. Plackter*, Assistant County Counsel, for defendant (*Murray Fredericks*, County Counsel, attorney).

HAINES, J. S. C.

Plaintiff, receiving welfare assistance, was involved in three automobile accidents concerning which she brought suit. Her anticipated recoveries are subject to reimbursement claims of the Atlantic County Welfare Board. Those claims are the basis of this action. One suit was settled and is outside the scope of this opinion; anticipated settlements of the other two invite this decision.

Sometime after both accidents had occurred the welfare board required plaintiff to execute a reimbursement agreement which obligated her to repay certain welfare benefits from any monies recovered in her suits. Her action seeks a declaratory judgment as to whether the agreement and that statute upon which it is based require the repayment of benefits received prior to the date of the agreement and whether the monies recovered are subject to the payment of counsel fees. It appears that the anticipated recoveries may be less than the total amount claimed by defendant. Cross-motions for summary judgment have been filed. There are no factual disputes and the issues are ripe for determination as a matter of law. *Judson v. Peoples Bank & Trust Co.*, 25 *N.J.* 17 (1957).

The statute involved is *N.J.S.A.* 44:10–4, which, as amended in 1977, provides:

Repayment of assistance; claims against minors' estates; compromise and settlement of claims

(a) Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending <u>entitlement</u> to a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare <u>agency</u> may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent, <u>or</u> parents, <u>or relative</u>, to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted <u>from the date of</u>

entitlement to such payment. Upon any refusal to make repayment, including refusal by any person acting for or on behalf of such parent or parents, or relative, in accordance with such promise, the county welfare agency may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor.

The underlined portions of the statute represent words added or changed by the 1977 amendment.

Plaintiff interprets the statutory language as requiring the reimbursement of welfare monies only with respect to those paid after the reimbursement agreement is executed. She relies upon *In re Doughty*, 160 *N.J.Super.* 126 (App.Div.1978), which construed the statute prior to its 1977 amendment, a construction adopted by the Supreme Court when it decided *In re Jackson*, 79 *N.J.* 517 (1979). At that time the statute authorized a reimbursement agreement containing a "promise to repay, from the funds anticipated, the amount of assistance to be granted." The *Doughty* court found (79 *N.J.Super.* at 130) that the statute made no provision for repayment "from an already realized claim, of past received assistance as a condition for continuation of assistance." Since 1977 the statute has authorized an agreement to repay "from the funds anticipated, the amount of assistance to be granted *from the date of entitlement to such payment.*" (Emphasis supplied.) Plaintiff points to the retention of the words "to be," arguing that they display a legislative intent limiting repayment to those monies "to be granted," in short, to monies paid after the agreement is executed. The argument is not persuasive. Admittedly, the language is confusing; there is a contradiction in tenses. "Assistance to be granted" connotes future payments, while "from that date of entitlement to such payment" may refer to a past or a future date. Here, for example, "entitlement" occurred on the dates of the accidents, prior to execution of the reimbursement agreement and therefore past dates.

■ The confusion must be resolved through consideration of any available statutory history and the application of appropriate rules of construction through which the true intention of the Legislature may be determined. *Safeway Trails, Inc. v. Fur-*

*man*, 41 *N.J.* 467 (1964). The 1977 amendment to the statute added the references to "entitlement." Under plaintiff's theory this word and the new clause, "from the date of entitlement to such payment," would be entirely superfluous; the result to be obtained under the new legislation would be exactly the same as that obtained under the old. The Legislature cannot have intended to adopt an amendment which amounts to a useless gesture. *Handleman v. Marwen Stores Corp.*, 53 *N.J.* 404, 413 (1969). Welfare instructions adopted to implement the statute call for the repayment of welfare monies from the date of the accident, not from the date of the agreement. *Public Assistance Manual*, "Resources & Repayments," N.J. Dep't of Human Services, Div. of Public Welfare, Transmittal Letter 7B 17, § 395(a) (May 1979). This practical interpretation of the statute by the agency which must enforce its provisions is a legitimate source of legislative intent. *State v. Resorts International Hotel*, 173 *N.J.Super.* 290 (App.Div.1980). The purpose of the statute also seems clear: to require a person, supported by welfare monies during a time of anticipated but unrealized income, to treat the assistance monies as a loan which must be repaid when the income is realized. The arrangement satisfies the needs of the welfare recipient while protecting the public treasury.

*In re Jones*, 170 *N.J.Super.* 478 (App.Div.1979), addressed part of the instant question: whether welfare monies paid prior to the execution of a reimbursement agreement must be repaid under the statute. In that case the trial judge applied the provisions of the 1977 amendment and ordered reimbursement from the date a friendly judgment was entered. The Appellate Division held that the original statute was applicable, that reimbursement could be ordered only with respect to assistance monies received after the date of the agreement. It said: "The trial judge erred in prospectively applying the *contrary provision* of the 1977 amendment and ordering reimbursement from and after the date of the friendly judgment." (170 *N.J.Super.* at 482; emphasis supplied.) Though dictum, it is an acknowledgment by the court that the 1977 amendment effectively changed the statute and authorized repayment of monies received prior to the date of reimbursement agreement.

■ A valid argument could be made that tort recoveries for personal injuries should not be subject to repayment provisions; however, the intention of the Legislature in adopting the present statute has been held to require such recoveries to be treated as resources subject to reimbursement. *In re Jackson, supra.* The trial court in *Jackson* ordered reimbursement of welfare assistance paid after the date of the accident. The Supreme Court, remanding the matter to the trial court, held that the 1977 act authorized repayment of assistance only from the date of the agreement to repay, noting, however, (79 *N.J.* at 527) that the 1977 amendment "has made a substantial change in this provision." In the present case reimbursement is requested also from the date of the accident, but the language of the amendment is now applicable. Consequently, it is now the date of the accident which controls, that is, the date on which there was "entitlement to a payment . . . of funds arising from a claim," subject only to the condition that plaintiff recover.

■ Plaintiff makes the alternative argument that, notwithstanding any interpretation of the statute, the reimbursement agreement itself provides for a recovery of welfare assistance paid only after the date of the agreement, so that contract law requires the result contended for by her. The agreement provides, in pertinent part:

I, Gemma Falgiatore, . . . for the purpose of receiving assistance for myself and my children, in accordance with New Jersey Statutes Annotated, Title 44, Chapter 10, Assistance for Dependent Children, do hereby promise, in consideration of the granting of such assistance, to repay the County Welfare Board for that portion of any assistance so granted which may be paid during the period pending my receipt of certain funds which are anticipated by the virtue of a claim or other action against driver of automobile arising out of injuries I sustained . . .

In *Doughty, supra,* the identical language was construed to limit the recovery of welfare monies to those paid after the date of the agreement. The Appellate Division, however, was dealing with an agreement which had been executed before the 1977 amendment to the statute was adopted. Necessarily, the agreement was construed to reflect the legislative commandment; a different interpretation would have deprived it of statutory

authority. The present agreement, while using identical language, was executed after the 1977 amendment. The provisions of the *Public Assistance Manual, supra,* reflecting the sense of the new statute, require the county welfare agency to pursue recovery of "the amount of cash assistance granted . . . from the date of the accident or occurrence which gave rise to the settlement to the date of payment, regardless of the date of execution of the Agreement to Repay." Consequently, *Doughty's* construction of the agreement is no longer appropriate.

Undoubtedly the language of the agreement could be much improved. It is subject to difficulties of construction similar to those encountered in the application of the underlying statute. However, it may be read, and therefore should be read, to enforce the provisions of the amended legislation. While the contract language refers to "assistance so granted," seemingly referring to assistance granted after the date the reimbursement agreement is signed, it continues with the language "which may be paid during the period pending my receipt of certain funds." Welfare monies were paid from the date of the accident (the date of entitlement) to the present time. The "period pending my receipt of certain funds" is the period commencing with the date of the accident and ending on the date of the receipt of recoveries in the accident suits. This interpretation reads the statutory directive into the agreement as well as the mandatory language of the welfare manual.

The board claims that no counsel fees may be deducted from the funds recovered by plaintiff, relying upon *In re Jones, supra. Jones* does not require that result. In that case a personal injury claim was settled for $25,000, from which medical expenses, counsel fees and costs were paid. The balance of $13,000 was deposited in a trust account and became the subject of a claim for reimbursement of welfare benefits pursuant to an agreement with the injured party. The welfare recipient argued that the board should pay a pro rata proportion of her counsel fees from the $13,000 fund. The court rejected this demand. It held that subrogation rules normally requiring a contribution toward fees were not applicable to welfare boards;

they are not subrogees and have no direct cause of action against a tortfeasor for monies advanced to a welfare recipient.

In *Jones* the court considered a claim against a net recovery, the amount of money left *after* the payment of counsel fees. No claim was made to any part of the damages recovered which went to the payment of these fees. In the present case the board claims a right to receive the entire amount of plaintiff's tort recovery, without deduction of any counsel fees. That result would not accord with public policy; if fees are not payable from damage recoveries by welfare recipients, attorneys will not undertake their cases and there will be no recoveries.

The statute, *N.J.S.A.* 44:10–4, authorizes a reimbursement agreement which requires the repayment of benefits from funds to which there has been an "entitlement." A welfare recipient, seeking to recover damages in a tort action, has "entitlement" only to the monies recovered after the payment of expenses, including counsel fees. The statute should not be interpreted otherwise. The language of *Jones* confirms this interpretation:

> If the personal injury recovery predated the commencement of welfare assistance, the *net and unexpended balance* then remaining after payment of counsel fees and other legal expenses would clearly be a factor to be properly considered by the Welfare Board in determining an applicant's eligibility and need in the same manner as is any other non-exempt asset owned by the applicant, including any other non-exempt asset acquired by litigation whose expenses have already been borne in full by the applicant . . . We see no fundamental difference where the recovery is obtained after welfare assistance has commenced and no reason why, in both situations, the amount of the asset it represents should not be the same, namely, the *net* recovery: [170 *N.J.Super.* at 485; emphasis supplied]

Plaintiff's reasonable counsel fees and other litigation expenses are therefore to be deducted from the damages awarded to her, after which the monies remaining will be applied to the repayment of welfare benefits. This arrangement may result in a sharing of the suit costs by the board, but that result obtains only if the amount due to it cannot be paid in full. The *Jones* rule is not thereby abused.

Costs are allowed to plaintiff.