204 N.J. Super. 564 (1985)
499 A.2d 553
ANGELINA HART, AN INFANT BY HER PARENT AND GUARDIAN AD LITEM, PEARL HART, AND PEARL HART INDIVIDUALLY, PLAINTIFFS,
v.
ANNE T. FOX, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided July 12, 1985.
*566 Richard A. Greifinger for plaintiffs (Greenstone, Greenstone & Greifinger, attorneys).
John Voynick, Jr. for defendant (Carpenter, Bennett & Morrissey, attorneys).
*567 Nicholas T. Grosch, Assistant County Counsel, for Essex County Division of Welfare (David H. Ben-Asher, Essex County Counsel, attorney).
VILLANUEVA, J.S.C.
The issues involved are (1) whether the recent amendment to N.J.S.A. 44:10-4(a) excludes from reimbursement to the county welfare agency all compensatory damages awarded for a minor's personal injury and (2) if such awards are now exempt from reimbursement, should the statute be applied retroactively.
The court holds that the new statute prohibits welfare agencies from recouping welfare payments made to minors from tort claim proceeds for compensatory damages distributed after April 8, 1985.
These issues arise because the Essex County Division of Welfare demands that part of the net proceeds to be paid by defendant to the infant plaintiff be paid to it to recover payments of welfare assistance paid by it to the infant plaintiff.
From February 5, 1982 to April 1, 1985, welfare assistance of $2,884 was paid by the Essex County Division of Welfare to Pearl Hart on behalf of her infant daughter, Angelina Hart, under the Assistance for Dependent Children Act, N.J.S.A. 44:10-1 et seq. Nothing has been repaid.
This problem arose because the Legislature amended N.J.S.A. 44:10-4(a) on April 9, 1985, purporting to exclude from reimbursement compensatory damages awarded to an infant from a tortfeasor. L. 1985, c. 120, § 4.
On February 5, 1982, plaintiff Angelina Hart, then age 15, was a pedestrian when she was struck by an automobile owned and operated by defendant. She was hospitalized for ten days with various injuries, from which she has substantially recovered. She does, however, have a permanent disability as a result of a broken big toe, which she still cannot bend. As a *568 result of defendant's alleged negligence, plaintiff instituted this action.
A settlement was made between the infant plaintiff and defendant by which plaintiff received a gross amount of $8,500 with a net balance to her of $6,000 to be held by the Essex County Surrogate pursuant to N.J.S.A. 3B:15-16. This settlement was approved by the court subject to the claimed welfare lien.
The county became involved when it learned that the court had approved an infant's settlement subject to the county's claim for reimbursement of welfare payments.
The county does not question that this amendment to N.J.S.A. 44:10-4(a) purported to exclude from reimbursement to welfare agencies all compensatory damages awarded to an infant in a personal injury action despite the fact that the amendatory language is not totally clear, but it contends that it applies only to causes of actions which accrued after April 8, 1985 and for welfare payments made after the effective date of the amendment.
The Department of Human Services, the state agency which supervises and regulates welfare agencies, has taken this position and the Essex County Division of Welfare contends it is bound by the State's position.
The new statute, which became effective immediately, provides:
4. (a) Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending entitlement to a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, other than that portion of a personal injury award which a court specifically awards to a child to make him whole as a result of an injury, the county welfare agency may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents, or relative, to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted from the date of entitlement to such payment. [N.J.S.A. 44:10-4(a)]
The statement to the original bill reads:

*569 Introductory Statement
Assembly No. 1612  L. 1985, c. 120
The purpose of this bill is to see that personal injury awards to infants are properly distributed to the infant in situations where the recovery is to make the child whole. For example, if a child loses a leg, or the impairment of another part of his body, the child will be burdened throughout his life with such a problem and having more difficult times competing for the educational and occupational benefits which might get him off welfare. The child's injury should not be considered a fortuitous event which generates a reimbursement to the government of money paid to welfare recipients.
This statement adopts the former successful opposition to the theory of recoupment sought by welfare boards which was discussed by Judge Miller in Cumberland Cty. Welfare Bd. v. Rodriquez, 144 N.J. Super. 365 (Law Div. 1976):
... A judgment in a personal injury action cannot be considered income; rather, it must be considered a substitution for wholeness of body. The child's health is not a resource considered by the [welfare] board in determining whether or not to give assistance. If the board is to recover money from such judgments, it must follow the procedure established by the Legislature in N.J.S.A. 44:10-4(a) * * *
Our affluent, yet cost-conscious, society need not yet go so far as to demand from an impecunious infant the sacrifice of, say, a leg. It likewise ought not require of him that he turn over to it monies awarded him in compensation for the sacrifice of that same leg.... [at 381-382]
However, after Judge Miller denied relief to the welfare agency, the statute was amended in 1977 to permit such recoupment. L. 1977, c. 127, § 4.
Although the former statute did not specifically refer to a child's pending tort claim for personal injuries, it has been held that such a cause of action was a claim or interest within the meaning of section 4(a) and that a welfare agency was entitled to repayment of assistance payments made on behalf of the child out of the personal injury recovery. Matter of Jackson's Estate, 79 N.J. 517 (1979); Francis v. Harris, 100 N.J. Super. 313 (Law Div. 1968), aff'd o.b. 103 N.J. Super. 440 (App.Div. 1968), certif. den. 53 N.J. 227 (1969).
It is clear from a reading of the statement to the original bill that this amendment of the statute was directed at the law *570 established by the courts that compensation in tort actions awarded to children receiving aid under the act of assistance for dependent children was recoverable by welfare agencies. By amendment the Legislature sought to protect that portion of a personal injury award necessary "to make the child whole."
While the general rule of statutory construction favors prospective application of legislative changes, this rule is "not to be applied mechanistically to every case." Gibbons v. Gibbons, 86 N.J. 515, 522 (1981). It merely serves "to aid the court in its quest for legislative intent." Rothman v. Rothman, 65 N.J. 219, 224 (1974). When the Legislature does not manifest a clear intent that a statute is to be prospectively applied, courts must apply other well-settled rules to determine whether the statute should be applied retroactively. Gibbons, supra 86 N.J. at 522.
The intention of the Legislature is gathered from the provision enacted and by the application of sound and well-settled canons of construction. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). The sole objective of the rules of statutory construction is the discovery of the legislative intent. Accordingly, every technical rule as to the construction of a statute must yield to the expression of the paramount will of the Legislature. Wilkinson v. Leland, 27 U.S. 627, 2 Pet. 627, 7 L.Ed. 542 (1829). The intention of the Legislature when discovered must prevail over any rule of construction to the contrary. Brown v. Barry, 3 U.S. 365, 3 Dallas 365, 1 L.Ed. 638 (1797).
It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction in favor of the remedy provided by law or in favor of those entitled to the benefits of the statute. This is true of a curative statute having a remedial purpose or a statute seeking the correction of recognized errors and abuses remedying defects in earlier acts or implying an intention to reform or extend existing rights. 73 Am.Jur.2d § 278 at 443.
*571 Legislation regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedy defects therein whether previous difficulties were statutory or were part of the common law. Remedial legislation implies an intention to reform or extend existing rights and has for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects. 73 Am.Jur.2d § 11 at 275-276. Remedial statutes are those designed to correct imperfections in prior law by generally giving relief to the aggrieved party. Coffman v. Coffman, 60 A.D.2d 181, 400 N.Y.S.2d 833 (Sup.Ct. 1977).
Statutes ordinarily have prospective application. Ellis v. Caprice, 96 N.J. Super. 539 (App.Div. 1967). A prospective statute, as its name implies, operates on conduct, events and circumstances which occur after its enactment. 2 Sutherland, Statutory Construction (4 ed. Sands 1973), § 41.01 at 245. The terms "retroactive" or "retrospective" describe acts which operate on transactions which have occurred or on rights or obligations which existed before the passage of the act. Weinstein v. Investors Sav. and Loan Ass'n, 154 N.J. Super. 164 (App.Div. 1977).
When considering whether a statute should be applied prospectively or retrospectively, the court's quest is to ascertain the intention of the legislature. State Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473 (1983).
Statutes should not be given retrospective effect when property rights are adversely affected in the absence of an unequivocal expression of the Legislature's intent that a statute shall have that effect. Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372 (1954). N.J. Const. (1947) Art. IV, § VII, par. 3.
A statute is not to be applied retroactively unless the statute itself states or implies retroactivity is intended. However, if statute is ameliorative or curative, or if there is no legislative intent that the statute is limited to prospective *572 application, the expectations of the parties or similar considerations may warrant retroactive application of the statute. Communications Workers of America, AFL-CIO v. Public Employment Relations Com'n, 193 N.J. Super. 658 (App.Div. 1984).
This statute as amended if applied retroactively would not destroy any vested right nor would it adversely affect any property rights. The only rights affected by the statute are inchoate. The purpose of the statute is remedial and curative.
Retroactive operation will more readily be ascribed to legislation that is curative or legalizing than to legislation which may disadvantageously, though legally, affect past relations and transactions. In re Smigelski, 30 N.J. 513 (1959).
Where a statute affects inchoate rights or is remedial in nature it will be construed retroactively if the legislative intent clearly indicates that retroactive operation is intended. There is also authority for drawing a distinction between retroactive acts in terms of whether their primary influence is on public or private interests for the purpose of being more indulgent toward retroactivity in the former than in the latter type of statute. 2 Sutherland, supra, § 41.04 at 253.
When courts are examining legislation relating to matters of general public interest they apply the law retroactively, even though it may affect a substantive right. On the other hand, in their relationship with each other as individuals, men should be able to assess with some assurance the results of their conduct. Theodosis v. Keeshin Motor Exp. Co., 341 Ill. App. 8, 92 N.E.2d 794 (Ct.App. 1950).
The Supreme Court noted in Busik v. Levine, 63 N.J. 351 (1973):
... (W)here liability for prejudgment interest was established by statute, the statutes were held to be "remedial" and hence applicable to actions brought before the statute's effective date, and this notwithstanding the usual rule that statutes operate prospectively. Pepin v. Beaulieu, 102 N.H. 84, 151 A.2d 230 (Sup.Ct. 1959); Foster v. Quigley, 94 R.I. 217, 179 A.2d 494 (Sup.Ct. 1962); Kastal v. Hickory House, Inc., 95 R.I. 366, 187 A.2d 262 (Sup.Ct. 1963); Ballog v. Knight Newspapers, Inc., 381 Mich. 527, 164 N.W.2d 19 (Sup.Ct. 1969); see *573 also Wilcoxon v. Sun Oil Co., 49 Misc.2d 589, 267 N.Y.S.2d 956 (Sup.Ct. 1966). [At 361]
A reading of the new statute, in light of its ameliorative and curative purposes, leads to the inescapable conclusion that the amendment is intended to apply in a case such as this. In the statement accompanying the amendment, the Legislature stated that an injury to a child "should not be considered a fortuitous event which generates a reimbursement to the government of money paid to welfare recipients."
The Legislature acted to remedy a recognized inequity in the treatment of injured infants whose families received public assistance. Plaintiff is clearly one of those individuals for whose benefit the statute was amended. Any other interpretation would be contrary to the express terms of the statute and would thwart the clear legislative intent.
This amendatory language was clearly intended to affect all future distributions[1], i.e., where the fund was created and distributed on or after April 9, 1985. See In re Doughty, 160 N.J. Super. 126 (App.Div. 1978), certif. granted 78 N.J. 409 certif. dism. 81 N.J. 261 (1978), where the Appellate Division held that when an agreement to repay was executed "subsequent to the creation of the fund when judgment was entered" it was not an effective agreement to repay.
Therefore, regardless of the county's contention that the statute cannot be enforced retroactively, the clear import of the language of the statute, as evidenced by the statement to the original bill, is that the new law should be applied to all future distributions, regardless of the date of the agreement to repay or date of the tort giving rise to the law suit.
The child's injury should not be considered a "fortuitous" event to him because it occurred after the amendment was adopted on April 9, 1985 but not fortuitous if it happened before that date.
*574 Besides being ameliorative and curative, the amendment is most workable, sensible and fair only if applied retroactively. In keeping with its beneficial purpose, the amendment became effective immediately. It did not contain an effective date in the future, nor was its application limited to accidents occurring or agreements executed on or after a certain date.
Limiting the statute to prospective application only continues the inequity recognized and intended to be cured by the Legislature and resurrects the difficulties of enforcement that have beset this statute during its history.
The Legislature was obviously changing the law to remedy what it considered was a harsh result  recoupment by welfare agencies of minors' personal injury awards. This change in the law required legislation to overcome case law that permitted such recoupment, Matter of Jackson's Estate, supra; Brinkley v. LaRoche, 178 N.J. Super. 243 (App.Div. 1981), whether or not there was an agreement to repay. Terry v. Harris, 175 N.J. Super. 482 (Law Div. 1982).
The Supreme Court noted in Matter of Jackson's Estate, supra:
The Assistance Standards Handbook (ASH), N.J.A.C. 10:82-1.1 et seq., promulgated by the Department of Human Services, Division of Public Welfare, specifically includes a suit or claim arising out of an accident as a resource. N.J.A.C. 10:82-3.7. The question is one of social policy. It can be argued that a child's recovery in tort for personal injuries, particularly where the injury is of a permanent nature, should not be considered a resource either for determining eligibility for AFDC assistance, or for repayment of assistance furnished during the pendency of the claim.
However, section 4(a) on its face clearly would subject an infant's tort recovery to its repayment provisions as it has been so construed administratively and judicially. In the light of such construction, it is significant that the Legislature, when it amended the Act in 1977, including section 4(a), did not see fit to exclude a claim for personal injuries as a source of repayment. [79 N.J. at 524]
Now the Legislature has seen fit to exclude a child's claim for personal injuries as a source of repayment to a welfare agency. It would be unrealistic to believe that in requiring such exclusion that it would be only for those infants injured after the law was amended.
*575 The only statutory construction that fulfills the legislative intent would apply the amendment to all actions where there has not yet been a distribution of funds. This construction is equitable to all injured infants without making distinctions based on the fortuitous dates of injury or repayment agreements or the filing of complaints. Such retroactive application to all potential entitlements would not result in "manifest injustice" to the county welfare agency since no action was taken or assistance rendered in reliance upon the old statute. If plaintiff were entitled to assistance, those payments would be made regardless of the outcome of any potential personal injury claim.
The legal responsibility to pay assistance was not affected by N.J.S.A. 44:10-4 prior to its amendment, nor has that responsibility been affected by the amendment.
Therefore, the amendatory provision applies to all distributions made on or after April 9, 1985, and welfare agencies have no right to recoup welfare payments from tort claim distributions after that date to minors for compensatory damages, regardless of when the cause of action accrued.
NOTES
[1] This opinion does not involve whether punitive damages would also be excluded.