175 N.J. Super. 482 (1980)
420 A.2d 353
LEE TERRY, AN INFANT BY HIS GUARDIAN AD LITEM FRANCINE TERRY, ETC., PLAINTIFFS,
v.
BEATRICE HARRIS ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided July 18, 1980.
*484 Joseph Maran for plaintiffs (Zarin and Maran, attorneys).
John F. Monica for the Essex County Division of Welfare (David H. Ben-Asher, Essex County Counsel, attorney).

Civil action
VILLANUEVA, J.S.C.
The issues involved herein are (1) whether a county welfare board can recover welfare payments from proceeds of a tort claim judgment when the recipient failed to disclose the existence of such pending lawsuit and (2) whether a regulation in the New Jersey Administrative Code purporting to authorize such action for recovery is effective when the statute regarding agreements to repay does not provide for such a remedy.
*485 This matter arises because the Essex County Division of Welfare demands that part of the proceeds of a settlement paid by defendant The Clorox Co. to the infant plaintiff herein be paid to it to recover alleged "overpayments" of welfare assistance paid by it to said plaintiff.
From December 1970 to April 1980 welfare assistance was paid by the Essex County Division of Welfare (hereinafter "county") to Francine Terry on behalf of her infant son Lee under the Assistance for Dependent Children Act, N.J.S.A. 44:10-1 et seq. The amount of assistance rendered is $8,751.65, which has not been repaid.
On December 28, 1970 Lee Terry, then age 3 1/2 years old, while living with his mother in the premises owned by defendants Beatrice Harris and Ollie Moore at 18 Quitman Street in Newark, sustained severe injuries. While playing near a sink on the premises the infant apparently ingested a quantity of "Liquid Plumber," manufactured by the Clorox Co. (Clorox). His mother was unaware at the time of the incident that she had grounds for a lawsuit. She also thought that the injury caused to the esophagus by burning would slowly heal. In 1977, when his mother believed that Lee was well, he got sick again; Mrs. Terry was told that her son was in need of special treatment as a result of the swallowing of the solvent. She went to see a lawyer in late 1977, who sent her to another attorney to file a lawsuit. On February 3, 1978 suit was filed on behalf of Lee Terry, still an infant, against the landlord and Clorox.
On April 23, 1980, pursuant to a "friendly settlement," judgment was entered before this court in favor of Lee Terry by his guardian ad litem and mother, Francine Terry, in the amount of $35,000 less the amount of $8,750, to pay legal fees and expenses of litigation. This settlement concluded the case against Clorox arising out of the ingestion of the drain cleaner, but the lawsuit against the landlord remains open. It is at this point that the county first became involved when it asserted before this court a lien against Lee Terry's funds because of welfare payments it made in the amount of $8,751.65. At said time all payments to Francine Terry and her family were terminated. It is the *486 purpose of this opinion to determine the validity of the county's lien claim.
The county's asserted grounds for recovery are twofold. It is first alleged that the money received by Francine Terry on behalf of her son was, because of the failure of Mrs. Terry to inform the county of her son's pending lawsuit, an "overpayment" of welfare funds, and that case law supports the county's right to recover such "overpayments" summarily. The county's second ground concerns a New Jersey Administrative Code provision, N.J.A.C. 10:81-3.41(e)(1), which, it is asserted, stands for the proposition that in cases where information about an additional financial resource or pending lawsuit of a welfare recipient is withheld by a recipient or his or her representative, and as a result of this withholding the county fails to obtain necessary agreements by the recipient to repay the county for benefits received, the county should be permitted to proceed as though such agreements did exist.
According to the county, it is dependent upon its "clients" (i.e., welfare recipients), as the major, if not sole, source of information, to keep it apprised of a recipient's change in economic status. It attempts to compel the recipient to respond by having him or her initially fill out a questionnaire (Form PA-1J). This questionnaire sets forth numerous questions relevant to the recipient's income and other financial resources. It also is required of the recipient to update this questionnaire every six months. N.J.A.C. 10:81-5.2. This involves the signing of an affidavit that no change in resources has occurred up to the date of signature or what the change is, if there were one. Highly relevant to the case at hand is the fact that among the various sections provided "for reporting resources" one is a category entitled "pending claims." On the forms entitled "Application and Affidavit for AFDC ..." submitted by the county as evidence, duly signed by Francine Terry on behalf of herself and her son Lee, is a question which reads:
Do you or anyone making application have any pending claims, such as lawsuits ...?
*487 These questions were answered in the negative on June 22, 1978, March 16, 1979 and October 23, 1979. These answers are required to insure that the resource information is kept current. Since all of the aforementioned dates fall within the time period in which the lawsuit of Lee Terry was pending, it is obvious that the answers were not correct and thus the county had no information on which it could act in response to the changed status of Lee.
Additionally, the county points out that the welfare checks for AFDC (i.e., the Aid for Dependent Children program) made payable to Francine Terry contain, on their backs, the following certification in both English and Spanish:
PAYEE'S STATEMENT
By signing this check I state that all persons whose support is included in this payment are in need of cash assistance. I have told the welfare board of all income resources or circumstances and will notify the agency at once of any changes affecting my payment.
Directly beneath the above-cited certification on each check is a space provided for recipient's signature. Each check submitted was signed by the infant's mother, Francine Terry, the payee.
The facts presented to this court by way of the "Application and Affidavit" form, the checks and Francine Terry's own admissions clearly establish that Francine Terry had a duty to report to the county the existence of the pending lawsuit of her son. The court finds that Francine Terry, the welfare recipient's mother and guardian of Lee Terry, withheld pertinent resource information which would have materially affected the action of the county in providing further welfare support on behalf of Lee.
It becomes necessary to examine the merits of the two grounds that the county asserts give rise to a right on its behalf to recover funds which either would have not been paid or would have been recovered except for Francine Terry's withholding of information.
It is the contention of plaintiffs that no right of recoupment exists because there is no authority, statutory or otherwise, *488 which sanctions such a procedure. They contend that the county is limited to whatever methods of recovery are expressly provided for in the legislative scheme, and since the remedies available to the county concerning recoupment from a welfare recipient for funds obtained from a successful civil tort claim are specific and fully prescribed in N.J.S.A. 44:10-4(a), and no mention is made of the procedure invoked by the county here, no relief can be granted to it.
The statutory provision around which much of the controversy revolves, N.J.S.A. 44:10-4(a), provides, in pertinent part, as follows:
Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is a pending entitlement to a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare agency may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent ... to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted from the date of entitlement to such payment. Upon any refusal to make repayment ... the county welfare agency may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor. [as amended effective July 1, 1977]
Conspicuous by its absence from this provision is any regulation regarding a recipient's failure to notify the county welfare agency. This, plaintiffs argue, is evidence of the Legislature's intent to limit the power of the welfare agency to recoup simply to those cases in which an agreement to repay has been obtained.
In the case of Essex Cty. Welfare Bd. v. Hellams, 103 N.J. Super. 438 (1968), the Appellate Division held that the county welfare board was not entitled to repayment of welfare funds advanced for support of an infant defendant out of trust fund bank account representing the net proceeds of the settlement of a personal injury claim of the infant where the welfare board had not obtained a written promise to repay, from funds anticipated, the amount of assistance to be granted.
In the brief opinion by the Appellate Division the court indicated that the dictates of N.J.S.A. 44:10-4 would not be *489 interpreted broadly. It was apparent, furthermore, that this provision would not be regarded as merely advisory but rather as mandatory. The court said:
... The provisions of N.J.S.A. 44:7-19 authorizing the Welfare Board to bring appropriate action to recover moneys due for assistance given any person, insofar as assistance given a dependent child is concerned, must be read with the provisions of N.J.S.A. 44:10-4 ...
... [R]epayment of assistance granted to a needy dependent child, from funds received by the child, shall be had in accordance with N.J.S.A. 44:10-4. (Hellams, supra at 439).
Also in support of plaintiffs' contentions is the subsequent case of Cumberland Cty. Welfare Bd. v. Rodriquez, 144 N.J. Super. 365 (Law Div. 1976), which dealt, in broad terms, with the nature, use, validity and need of "agreements to repay" under N.J.S.A. 44:10-4. It was a consolidation of three motions for orders seeking the turnover of funds. Two of the motions involved the proceeds of personal injury cases. In these cases signed agreements to repay were found to be invalid because they were signed prior to the pendency of any specific tort claim.
Crucial to the decision in Cumberland County, supra, is the explanation by the court of the unique nature of a potential civil judgment. The court indicated that such a benefit is not, in fact, "income," but rather compensation of a very special nature, personal to the party entitled thereto. It embodies an entitlement which should not easily be taken from the one whose suffering caused it to issue. Thus the court in Cumberland County took a negative approach to any theory of recoupment proffered by the welfare board which was not clearly and expressly provided for in N.J.S.A. 44:10-4:
... A judgment in a personal injury action cannot be considered income; rather, it must be considered a substitution for wholeness of body. The child's health is not a resource considered by the [welfare] board in determining whether or not to give assistance. If the board is to recover money from such judgments, it must follow the procedure established by the Legislature in N.J.S.A. 44:10-4(a) ...
Our affluent, yet cost-conscious, society need not yet go so far as to demand from an impecunious infant the sacrifice of, say, a leg. It likewise ought not require of him that he turn over to it monies awarded him in compensation for the sacrifice of that same leg ... Like all governmental action, this one must be administered with common sense and a sensitivity to the delicate interplay of the fundamental underlying factors.

*490 In summary, the following principles apply:
(1) No reimbursement may be had unless a valid agreement under N.J.S.A. 44:10-4(a) is signed ... [at 381-382].
The county, however, argues that case law does exist in support of its position that a right of recoupment may be implied, absent a signed agreement to repay, under N.J.S.A. 44:10-4. The court is referred, specifically, to the case of Redding v. Burlington Cty. Welfare Bd., 65 N.J. 439 (1974). The Redding case arose as a result of defendant county's filing of over 100 lawsuits in which it sought to obtain civil judgments for "overpayment" of Aid for Dependent Children (AFDC). A number of defendants in these suits filed a new suit as a class action seeking to restrain such prosecutions by the welfare board on the grounds that the board had no power under the Social Security Act, state law or applicable federal or state regulations to bring a civil action to recover AFDC overpayments made to welfare recipients.
After canvassing the law in other jurisdictions which had enacted similar welfare legislation, the Redding court concluded that the county does have the right to recoup "overpayments". The court went on to expressly reject the hypothesis that since the Legislature had not expressly given the welfare board the authority to recover overpayments, the board was powerless to take such actions. Central to reaching its decision was making the distinction between reimbursement of a payment and recoupment of an overpayment. In the latter case, the court said, there would be a legal obligation to repay because the payment of the overage was, from its inception, improper.
The court said:
The trial court held that the welfare board had no power under our State statutes to bring suit to recover AFDC overpayments because the Legislature had not specifically authorized such action. This reasoning would be valid if the welfare board were attempting to secure reimbursement of AFDC grants of assistance. This would be a matter of policy which the Legislature would have to establish before a welfare board could act.
However, this is not the situation presented. We are here dealing with overpayments of assistance, i.e. public money paid out in excess of that permitted by law. The mere receipt of such money can be said to create an obligation to repay, akin to the common law action in assumpsit for money had and received. In such a situation, it is unnecessary for the Legislature to specify *491 that a welfare board has the right to recover this money. As heretofore noted, such right would be inherent in the board's functioning unless the Legislature provides otherwise. [at 445.]
The county may not have had an expense for the welfare payments made on behalf of Lee Terry during the period of entitlement had proper notification been given to the county by Francine Terry, as she was obligated to do. For had she done so, pursuant to N.J.S.A. 44:10-4(a), the county would in all likelihood have sought to obtain from her a signed agreement to repay and then have retroactively recouped its payments automatically upon issuance of a judgment in the civil action; or it could have terminated such assistance in the event Francine Terry refused to sign such agreement to repay.
However, for two reasons, this court must refuse to adopt the county's "overpayment" theory. The first reason why Redding must be distinguished from this case is because of an explanatory footnote made by the Supreme Court in that case. The footnote provides guidelines useful to this court in defining the breadth of a term which otherwise could be interpreted in limitless fashion, the term being the crucial word "overpayment."
The Board represents that in each case the overpayment resulted from a lack of knowledge on the part of the Board of the receipt of some type of income by the defendant, or the possession by defendant of assets, which, if known by it, would have reduced or eliminated a monthly grant of public assistance to the defendant. [Id. at 442.]
It is clear from this footnote that the court in Redding was not concerned with pending civil suits when it spoke of "income." As is made abundantly clear in N.J.S.A. 44:10-4 itself, upon issuance of a signed agreement to repay the county is bound to continue the benefits of the welfare recipient. It is only the refusal of the recipient to sign such an agreement that gives the county grounds to terminate assistance. Thus receipt of the relevant information here would not have caused the "reduction or elimination of a monthly grant of public assistance," as Redding, supra at 442, states would be a necessary characteristic of an "overpayment."
*492 The second reason why the "overpayment" theory does not apply to cases wherein the recipient or his or her representative fails to notify the county of a pending lawsuit is that there are two decisions which, when read in conjunction with Redding, distinguish it, based on the factors which are also present here.
One of the cases which ably illustrates the point of distinction is In re Doughty, 160 N.J. Super. 126 (App.Div. 1978). In that case, decided four years after the Redding case, the Essex County Welfare Board sought reimbursement for welfare assistance paid under the AFDC program. The source out of which the county was seeking satisfaction was a trust fund representing the tort recovery of an infant welfare recipient, Gary Doughty. It was a case with facts strikingly similar to those of the instant case. The injury was sustained by Gary on July 7, 1972 as a result of an automobile accident. Suit was instituted on his behalf on May 4, 1973 and judgment was entered in favor of the child on April 10, 1975. At no time was notice of the events surrounding the accident or the lawsuit ever volunteered by Mrs. Doughty to the county. It was not until June 3, 1975 that the welfare board obtained notice of the existence of the funds generated by the suit. Soon thereafter the county obtained from Mrs. Doughty a signed agreement to repay.
It was made quite clear at the beginning of the court's opinion in Doughty, that it was going to deal squarely with the issue of the nature of the duty to inform the county of a pending litigation and the effect upon the welfare recipient or his or her representative for their failure to do so. The court expressly acknowledged as a matter of fact that Mrs. Doughty should have been aware of her obligation to report the information surrounding the accident and the lawsuit, but failed to do so. The court stated:
... At the hearing on the order to show cause why the board should not be reimbursed, Mrs. Doughty testified that she had not informed the welfare board of the accident or the filing of the suit because she took it for granted that they would find out once the child was in the hospital and Medicaid paid the bill. Id. at 128.
The Doughty court supra, rejected the contention of the county that when the welfare recipient breached her duty to *493 inform it of the existence of the cause of action, it could obtain an effective agreement to repay from Mrs. Doughty subsequent to the creation of the fund when judgment was entered. The court read N.J.S.A 44:10-4 as the exclusive provision governing the recovery of proceeds from a tort action, and absent complete compliance with the procedures set forth therein, the county could obtain no recovery.
... The promise to repay is a condition of initial or continuing eligibility and the granting or continuing of assistance is deemed the due consideration for giving such promise. The statute makes no provision for repayment, from an already realized claim, of past received assistance as a condition for continuation of assistance ...
The trial judge found that Mrs. Doughty had an obligation to report the claim and her failure to do so was the cause of the agreement's tardiness. However, we are not persuaded this is a valid reason to disregard the plain terms of N.J.S.A. 44:10-4(a) and allow the welfare board repayment when it has not properly secured in advance a valid agreement to repay in accordance with the terms of the statute. (citation omitted). The statute makes no mention of an obligation to report a claim and only states that when "it appears that there is pending a payment to the child" a welfare board may secure an agreement to repay. [at 130].
It has been argued, further, by the county in the instant case that part of N.J.S.A. 44:10-4(a) has since been amended from "pending a payment" to "pending entitlement to a payment," and therefore Doughty is distinguishable from the present case. This contention must also be rejected since the recipient here continues to refuse to sign an agreement to repay. Thus, the present case does not turn upon retroactively enforcing a late-signed agreement to repay, but rather upon whether there exists authority on the part of the county to recoup payments where no agreement to repay exists. It should also be noted that there is no other language in N.J.S.A. 44:10-4(a) which covers the precise factual circumstances here present upon which the county can infer a right to recoupment.
Plaintiffs contend that the sole relief available to the county under said statute is to cut off future funds to the plaintiffs for their failure to sign the agreement (which the county did after the first hearing in this matter). However, I cannot agree with plaintiffs' contention. Despite this Court's determination that N.J.S.A. 44:10-4(a) affords no express basis of recovery to the *494 county, and that the court's ruling in Redding, supra, on overpayments is not applicable, the county has urged a much more compelling argument upon which to base a right of recoupment. This is the argument based upon N.J.A.C. 10:81-3.41(e)(1), to which this Court will now address itself. The Administrative Code provision relied upon by the county reads as follows:
1. Upon liquidation of a resource for which a valid Agreement to Repay does not exist solely by reason of the applicant client's withholding of information about the matter the CWA (County Welfare Association) shall pursue collection activity as in this section, indicating to those concerned, including the courts, that except for the client's withholding of information, a valid agreement would have existed or the assistance would not have been granted ... [N.J.A.C. 10:81-3.41(e)(1)].
This particular portion of N.J.A.C. 10:81 became effective on March 15, 1979. Consequently, it postdates the Doughty case. Thus Doughty is of no aid in considering the effect of the above-cited administrative regulation upon N.J.S.A. 44:10-4(a). It is clear that N.J.A.C. 10:18-3.41(e)(1) is intended to cover a gap in the law left open by N.J.S.A. 44:10-4(a), a gap greatly in need of bridging, as is indicated by the decision in Doughty. It is a provision which expressly gives the county the right to treat a situation where no signed agreement to repay exists as if such an agreement did, in fact, exist. To do so it must be shown that (1) the client withheld information and, (2) as a result thereof, a valid agreement to repay would have existed or assistance would not have been granted.
In this case the court finds that both requirements of N.J.A.C. 10:81-3.41(e)(1) have been fulfilled. The facts, as previously recounted, show an instance where a client who had at her disposal information, which was material to the continuation of her son's receipt of welfare benefits, withheld such information from the county. Despite efforts by the county to have the client come forward with this information, Mrs. Terry never responded as she was obligated to do, and based on these facts (by not disclosing the lawsuit on periodic forms and by signing checks) the conclusion is inescapable that the pertinent information was "withheld" by her. It is equally reasonable to assume that upon learning of this pending entitlement the county would have acted either to obtain a signed agreement to repay or *495 would have terminated benefits for Lee. The county's representative explained at the hearing in this matter that this would be standard operating procedure. Clearly, then, N.J.A.C. 10:81-3.41(e)(1) is both pertinent to the facts of this case and is also satisfied hereunder.
In viewing the fact that N.J.A.C. 10:81-3.41 is merely an administrative regulation, what, if any, authority should be accorded it in view of the fact that there already exists a specific statutory enactment on the matter, namely N.J.S.A. 44:10-4(a)? We must look to case law for the answers. As the Supreme Court noted in Redding, case supra the organization, maintenance and operation of the AFDC program is governed by both state statute and regulation, each of which is authoritative.
... It is clear that a state participating in the AFDC program can establish proper procedures for the recovery not only of overpayments, but of basic AFDC grants. [citations omitted]. In each of these cases state statutes and regulations imposing an obligation on AFDC recipients to repay welfare grants out of specified kinds of assets were upheld ... [at 443].
Furthermore, the Redding court spoke extensively about how the New Jersey AFDC program has been one which has been implemented mostly by administrative regulations. "Our State act adopting the AFDC program has been implemented by administrative regulations ..." (65 N.J. at 445).
It is well established as the law in this State that an administrative agency is considered a minor legislative body when dealing with proposed regulations under a grant of power. Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104 (App.Div. 1969) aff'd. 54 N.J. 11 (1969). Much the same way that a legislative enactment created by the Legislature is viewed, the courts are disposed to look favorably upon the power of administrative agencies to promulgate their rules made in furtherance of the purposes for which they have been created. State v. Hubschman, 81 N.J. Super. 452 (Cty.Ct. 1963).
A state participating in the AFDC program can establish proper procedures for the recovery not only of overpayments but of basic AFDC grants. Redding v. Burlington Cty. Welfare Bd., supra at 443; Snell v. Wyman, 281 F. Supp. 853 (S.D.N.Y. 1968), *496 aff'd without opinion, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969); Charleston v. Wohlgemuth, 332 F. Supp. 1175 (E.D.Pa. 1971), aff'd without opinion, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972).
New Jersey adopted the AFDC program in 1959, N.J.S.A. 44:10-1 et seq., under which the county welfare boards administer the program subject to the supervision of the Department of Human Services (formerly the Department of Institutions and Agencies) which have adopted general policies, rules and regulations for carrying out the purposes of the act. Redding, supra at 442.
Under N.J.S.A. 44:10-3 the Commissioner of Human Services
... is authorized, directed and empowered to issue, or to cause to be issued by the appropriate departmental officers or agencies, all necessary rules and regulations and administrative orders.
* * * * * * * *
(c) To provide that, in determining eligibility for financial assistance and the amount of assistance to be granted, there shall be taken into consideration all other income and resources of the dependent child and of the parent, parents, or other relatives with whom such child is living....
The administrative regulation in question here, having been promulgated by the duly authorized rule-making authority in an effort to effectuate the policy of regulating the welfare repayment system, is entitled to the deference, mentioned above, which should be accorded any administrative regulation.
Despite the presumptions and weight accorded a duly enacted administrative regulation as mentioned above, it must be kept in mind that such a regulation must often coexist alongside provisions of superior legal effect, namely state statutes. Statutes, when they deal with a specific issue or matter, are the controlling authority as to the proper disposition of that issue or matter. Thus, any regulation or rule which contravenes a statute is of no force, and the statute will control. Kamienski v. Mortuary Science Bd., 80 N.J. Super. 366 (App.Div. 1963). Simply put, an administrative regulation may not narrow or restrict the scope of an otherwise specific and clearly-worded statute. N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 135 N.J. Super. 537 (Chan.Div. 1975) rev'd 155 N.J. Super. 218 (App.Div. 1977), mod. 82 N.J. 57 (1980).
*497 In the case of In re Black's Estate, 160 N.J. Super. 122 (1978), the Appellate Division reversed the trial court that had held that a welfare board was entitled to repayment of welfare funds out of a minor's personal injury recovery preserved in trust. The court held that such a trust fund was not available for repayment of welfare funds where an agreement to repay was signed after the receipt of the funds. It did so because it stated that a change in statutory policy is for the legislature and not the courts.
In the present case the change was made by the duly authorized administrative agency of the Legislature when it adopted N.J.A.C. 10:81-3.41(e)(1), effective March 15, 1979.
In the instant case it cannot be said that N.J.A.C. 10:81-3.41(e)(1) in any way narrows or restricts any express or specific provision of N.J.S.A. 44:10-4(a). It is the absence of any express or specific direction in N.J.S.A. 44:10-4(a) that necessitated the administrative regulation. Thus, N.J.A.C. 10:81-3.41(e)(1) merely supplements the pertinent statute in such a way as to make more consistent the utilization of an agreement to repay and more efficacious its use as a means for effectuating recoupment.
Rather than exceeding its authorized purposes or contravening any statute or policy, it is the conclusion of this court that N.J.A.C. 10:81-3.41(e)(1) is a refined regulation designed to help implement N.J.S.A. 44:10-4(a), and which does, in fact, aid in bridging a gap left open by the absence of any provision in the statute to compel the reporting of information which would enable the welfare agency to pursue the processing of agreements to repay. This is not only proper but laudatory, as it is the policy of this State to encourage administrative agencies to utilize their rule-making powers and not permit them to remain idle when their fair and timely exercise may suffice to avoid burdens upon the system they are authorized to regulate. R.H. Macy & Co. v. Taxation Div. Director, 41 N.J. 3 (1963).
To permit assistance money to be paid out in excess of that permitted by law would damage and destroy the AFDC program *498 and permit a willful or an unintentional wrongdoer to receive payments in amounts not authorized by law. In the instant case, due to the failure of Francine Terry to inform the county of the pending lawsuit and possible payment to her child arising from the claim which is the basis of this suit, the county was unable to comply with the statute and require the parent to execute an agreement to repay. The refusal of Francine Terry to execute the agreement to repay was contrary to the intent of N.J.S.A. 44:10-4(a) and the regulations of the State Division of Public Welfare.
Plaintiff, by withholding information from the county and thus preventing the county from obtaining an agreement to repay of a pending payment to the child of funds arising from a claim or interest legally and/or equitably owned by such child, prevented the county from obtaining an executed agreement to repay from the funds anticipated, thereby resulting in an improper payment of public assistance, contrary to law and regulations of the State of New Jersey charged with the administration of the AFDC program.
In light of the foregoing statute and regulations implementing same, there is no logical reason to reward a welfare recipient who refuses, willfully or otherwise, to disclose a pending lawsuit from not having to repay welfare assistance, whereas those welfare recipients who comply with the spirit and intent of the AFDC program are penalized because when they do so they are required to sign an agreement to repay or their assistance is terminated.
There is no reason why a county welfare board may not secure repayment of assistance payments made to a dependent child out of personal injury recoveries, in accordance with the plain terms of N.J.S.A. 44:10-4 and the regulations construing and implementing the statute, as authorized by N.J.S.A. 44:10-3. Francis v. Harris, 100 N.J. Super. 313 (Law Div. 1968), aff'd 103 N.J. Super. 440 (App.Div. 1968), certif. den. 53 N.J. 227 (1969). It is further the opinion of this court that N.J.A.C. 10:81-3.41(e)(1) falls into this latter category.
*499 It is also interesting to note that in Redding, supra, the court was considering the application of a related provision, N.J.A.C. 10:81-24.47 (now N.J.A.C. 10:81-7.45), a regulation which permits a welfare board to recover funds paid out as a result of fraud on the part of the recipient. Since fraud was not an issue in that case, that provision was not regarded as controlling. However, significantly, the court did not question its validity. Instead of the fraud provision, another provision is being applied herein, N.J.A.C. 10:81-3.41(e)(1). Consequently, there is a right to recoup welfare payments made to the Terrys because of Mrs. Terry's withholding of the pertinent information.
Having determined that the county is entitled to recoupment, it must now be determined from what date the county is entitled to recover.
It is the contention of the county that N.J.S.A. 44:10-4(a), by its July 1, 1977 amendment, entitles it to obtain recovery of any assistance rendered by it "from the date of entitlement to such payment." The term "payment" mentioned in the statute is to "funds arising from a claim or interest legally or equitably owned...." The county contends that since Lee Terry was injured on December 28, 1970 his "entitlement" arose at that time, and consequently it should be awarded the full $8,751.65 paid as assistance during this period.
While it is the conclusion of this court that under N.J.S.A. 44:10-4(a), as presently in force, had the county received a valid agreement to repay, it might be entitled to obtain all funds paid from the date of the incident, there is present here the additional problem of retroactive application which must limit, in part, the application of the statute. The case of In re Jackson's Estate, 79 N.J. 517 (1979), is controlling on this issue.
In Jackson the Essex County Welfare Board sought recoupment of assistance granted to a dependent child, Lisa Jackson. The child, on May 4, 1972, suffered severe burns on her left leg as the result of the negligent design by the City of Newark. At the time of the injury, she was three years old and receiving AFDC benefits. An agreement to repay was signed by Lisa's *500 mother on August 10, 1973. The suit was tried in December 1974 and resulted in a judgment of $20,000 on Lisa's behalf. On November 1, 1976, pursuant to a complaint filed by the welfare board based upon the agreement to repay, on the return day of an order to show cause the trial judge ruled that the welfare board was entitled to reimbursement from May, 1973. The Appellate Division affirmed in an unreported opinion, and an appeal was filed as a matter of right with the Supreme Court.
In upholding the validity of the agreement to repay the court also dealt with the question of from what date to calculate reimbursement. It should here be noted that in its complaint the City of Newark had mistakenly stated the date of the occurrence of the accident to be May 1973. This is the date the trial judge had used to calculate the date from which repayment was to be made, and not the date on which the agreement to repay was signed (which date was later than even the date mistakenly cited as the date of the accident). The Supreme Court did not rule that such a method of calculation was incorrect under N.J.S.A. 44:10-4, in its form as amended in 1977. The court in fact, tacitly acknowledged that this was the intent of the amendment, although it had to rule that the statute in its amended state would not be applicable because the events in Jackson all predated the amendment. Therefore, the statute was held to be only prospective in application.
... In the instant case although the agreement to repay was signed by the mother on August 10, 1973 the trial court, in ordering repayment out of the tort recovery, included the amount of welfare assistance furnished from May 1973, the alleged date of the accident. This was error as the statute in effect when the agreement was signed and the order for repayment entered provided only that the written promise to repay be for "the amount of assistance to be granted."[3] It is clear that the reimbursement provision of the Act as it then existed, extended only to the amount of assistance granted from the date of the agreement to repay. For this reason the order for repayment must be vacated and the matter remanded to the trial court for recalculation of the amount to be repaid.
[3] As heretofore noted, the 1977 amendment to the Act has made a substantial change in this provision. [In re Jackson's Estate, supra at 527].
Since the pertinent amendment became effective on July 1, 1977, the court will not permit recovery of any assistance paid prior to that date. However, since this suit was filed on February 3, 1978 (when plaintiffs first became aware that they *501 might have a cause of action), subsequent to the effective date of the statutory amendment, it is then that Francine Terry should have provided the county with notice, and the amended statute becomes pertinent. It would be equitable for this court to presume the existence of a valid agreement to repay on February 3, 1978 based upon the dictates of N.J.A.C. 10:81-3.41(e)(1), and to impose it, in accordance with the authority of N.J.S.A. 44:10-4(a), to require repayment of assistance paid from March 15, 1979 (the effective date of the regulation) to the date of the last payment made out of the funds available from the settlement made on behalf of Lee Terry of April 23, 1980.
Therefore, plaintiffs must repay the assistance granted to Lee Terry from March 15, 1979 until assistance was terminated. However, it will be repaid without interest since it would be inequitable to compel plaintiffs to pay interest when they had reason to believe that there was no requirement for reimbursement and their judgment did not provide for interest. Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 131 (1976); Manning Engineering, Inc. v. Hudson Cty. Park Comm'n, 71 N.J. 145 (1976); Corallo v. Essex Cty. Welfare Bd., 140 N.J. Super. 414 (App.Div. 1976).