213 N.J. Super. 123 (1986)
516 A.2d 641
BETTY REED, PLAINTIFF,
v.
JOHN SLAUGHTER, CONSTANCE SLAUGHTER, AND SLAUGHTER'S BETTER CLEANERS, DEFENDANTS, AND COUNTY OF ESSEX, DIVISION OF WELFARE AND STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, DEFENDANTS UNDER N.J.S.A. 2A:16-52.
Superior Court of New Jersey, Law Division Essex County.
Decided June 6, 1986.
*124 Norman A. Maranz for plaintiff.
Michael J. Stone for defendants John Slaughter, Constance Slaughter and Slaughter's Better Cleaners (Hoagland, Longo, Oropollo & Moran, attorneys).
Alan C. Stephens for County of Essex (David H. Ben-Asher, attorney).
Ivan J. Punchatz for State of New Jersey, Department of Human Services (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
YANOFF, J.S.C. (retired and temporarily assigned on recall).
The issues arise on a motion by plaintiff against the Essex County Welfare Board and the State of New Jersey, Division of Medical Assistance and Health Services, to approve a settlement. The Essex County Welfare Board and the State of New Jersey are not parties to the litigation. Instead, there is an action by plaintiff Reed against defendants Slaughter, et als., grounded on a fall by plaintiff in front of premises owned and controlled by defendants. The insurance carrier for defendants has paid the full amount of $25,000 of the policy into court. With interest, approximately $27,000 is now available.
Plaintiff received welfare payments from the Essex County Welfare Board from the date of the accident through January 19, 1986, totalling $13,805. Plaintiff also collected, by way of Medicaid, the sum of $7,930.58 for payment for expenses arising out of the accident in question. The welfare board and State of New Jersey were brought into the litigation by motion by plaintiff's counsel, seeking court approval for a structured settlement. The welfare board has appeared and claims a lien on the proceeds of the settlement under N.J.S.A. 44:10-4. The State of New Jersey claims a lien under N.J.S.A. 30:4D-7. I *125 am not certain that the procedure adequately brings the welfare board into the picture, but since the welfare board has appeared, filed a brief and argued orally, I consider the case as one for declaratory judgment under N.J.S.A. 2A:16-52, for the purpose of interpreting the pertinent statutes.
Additional significant facts are that plaintiff was not asked by the welfare board to execute a reimbursement agreement, and has not done so. This despite the fact that under date of February 17, 1984 her attorney advised the welfare board that he represented plaintiff in connection with an action for injuries sustained as the result of the fall. By letter dated March 27, 1984, sent to the attorney for plaintiff, the board claimed a lien. Under date of July 15, 1985, the attorney for plaintiff advised the board that the case was scheduled for trial and requested "an up-to-date statement of the amount that is now owing." In response, by letter dated August 7, 1985, the welfare board claimed a lien of $11,785. As indicated, the amount claimed at this point has increased to $13,805.
Significant also is the fact that plaintiff is no longer on welfare. It is proposed on behalf of plaintiff to pay immediately out of this sum $8,800 for legal fees and costs, and to put the balance in trust, with provision that nothing be released to plaintiff for a fixed period of at least ten years. If the fund were held for 20 years, the amount available to plaintiff would be approximately $83,000. If the sums received from welfare and Medicaid were paid at that time without interest, plaintiff would be left with approximately $60,000. If the welfare board and Medicaid were paid at once, after counsel fees, Hedgebeth v. Medford, 74 N.J. 360 (1977), cf. In re Guardianship of Jones, 170 N.J. Super. 478 (App.Div. 1979), nothing would be left to plaintiff.
Obviously, the crucial question is whether any indebtedness at all exists by reason of the Medicaid and welfare payments, for if it did, it would bear interest. See Bak-A-Lum Corp. v. Alcoa Bldg. Products, Inc., 69 N.J. 123, 131 (1976); Hopkins v. *126 Liberty Mutual Ins. Co., 158 N.J. Super. 176, 179 (App.Div. 1978); Busik v. Levine, 63 N.J. 351, 358 (1973). There would then be no advantage to plaintiff in deferring payment.
While plaintiff's attorney in the moving papers refers to both the welfare and Medicaid claims as "liens," since what is sought is approval of a settlement which will subordinate payment of both claims to payment to plaintiff, I shall address the real issue which is whether there is any obligation on the part of recipient to repay welfare or Medicaid.
N.J.S.A. 30:4D-7 makes it clear that receipt of Medicaid creates an indebtedness. Section 7.1b. specifically provides "every recipient shall promptly notify the division of any recovery from the proceeds of any settlement." Marmorino v. Newark Housing Authority, 189 N.J. Super. 538 (Law Div. 1983). However designated, the Medicaid claim must be paid out of the proceeds at once. This disposes of the Medicaid issue.
The welfare board takes the position that even without execution of a reimbursement agreement, it has a lien upon the proceeds of the settlement. This argument is unsupported by the language of the relevant statute.
N.J.S.A. 44:10-4(a), as amended by L. 1985, c. 120, reads as follows:
Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending entitlement to a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such a child or by either or both his parents, other than that portion of a personal injury award which a court specifically awards to a child to make him whole as a result of an injury, the county welfare agency may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents, or relative, to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted from the date of entitlement to such payment.
Nothing in the statute creates a lien upon funds of the welfare recipient. It is only the execution of a reimbursement agreement which entitles the board to repayment.
*127 The disputed section is part of the statutory scheme by which New Jersey implements sections of the Social Security Act of 1935. It was described in Redding v. Burlington County Welfare Board, 65 N.J. 439 (1974) by Justice Sullivan:
The AFDC program is one of a series of aid and assistance programs established under the Social Security Act of 1935. 42 U.S.C.A. §§ 301-1396. The category singled out for welfare assistance by AFDC is the `dependent child' who is defined in the act as an age-qualified `needy child' who has been deprived of parental support or care and who is living with any one of several listed relatives.
Participation in the program by a state is on a voluntary basis. However, once a state elects to establish an AFDC program and takes advantage of the substantial federal funds available for distribution to needy children, it is required to submit an AFDC plan for administration of the program to the Secretary of Health, Education and Welfare (H.E.W.) for approval. The plan must conform with the several requirements of the Social Security Act as implemented by rules and regulations promulgated by H.E.W. [at 441-442]
The New Jersey statutory scheme for welfare assistance is set forth in N.J.S.A. 44:1-1 et seq. In general, there is a division of responsibility between municipal and county administered welfare (N.J.S.A. 44:1-1 to:4-109). Chapter 5 deals with medical care and hospitalization of poor in general (N.J.S.A. 44:5-2 to -19.10); chapter 6 deals with dental clinics (N.J.S.A. 44:6-5); chapter 7 deals with old age and permanent disability assistance (N.J.S.A. 44:7-6.1 to -93); chapter 8 is financial assistance to certain needy persons (N.J.S.A. 44:8-33 to -152). Chapter 8 bears the title "General Public Assistance Law" (N.J.S.A. 44:8-107). It is a catch-all for
`Public assistance' means assistance rendered to needy persons not otherwise provided for under the laws of this State, where such persons are willing to work but are unable to secure employment due either to physical or mental disability or inability to find employment, and includes what is commonly called `relief' or `emergency relief'.... [N.J.S.A. 44:8-108]
This assistance is administered by the municipality (N.J.S.A. 44:8-114). There is no chapter 9. It is chapter 10 which implements the AFDC program. Under its provisions, assistance is given only to parents with dependent children. Assistance may be given to the parent to "help maintain and strengthen family life," N.J.S.A. 44:10-1(a)(2), or "to provide for the care of a dependant child whose parents have been denied *128 assistance" under the provisions of the statute. N.J.S.A. 44:10-1(a)(4). N.J.S.A. 44:10-3a authorizes the Commissioner of Human Services to make regulations to implement the program.
Here, Reed received payments from the county welfare board for herself alone and not for dependent children.
Redding, supra, considered the power of a county welfare board to recover overpayments under the AFDC program. Both the trial court and the Appellate Division held that overpayments could not be recovered. The Supreme Court reversed, holding that there was a common law obligation of repayment. In the course of the opinion, Justice Sullivan said:
The trial court held that the welfare board had no power under our State statutes to bring suit to recover AFDC overpayments because the Legislature had not specifically authorized such action. This reasoning would be valid if the welfare board were attempting to secure reimbursement of AFDC grants of assistance. This would be a matter of policy which the Legislature would have to establish before a welfare board could act.

(3) However, this is not the situation presented. We are here dealing with overpayments of assistance, i.e. public money paid out in excess of that permitted by law. The mere receipt of such money can be said to create an obligation to repay, akin to the commonlaw action in assumpsit for money had and received. In such a situation, it is unnecessary for the Legislature to specify that a welfare board has the right to recover this money. As heretofore noted, such right would be inherent in the Board's functioning unless the Legislature provides otherwise. [65 N.J. at 445; emphasis supplied]
The opinion in Redding, supra, assumes that in the absence of an enabling statute, a welfare board could not "secure reimbursement of AFDC grants of assistance" (id. at 445). "At common law in the absence of fraud in procurring relief a recipient of charity was under no obligation to repay the government agency disbursing such charity." Ogdon v. Workman's Comp. A.B., San Bernardino Cty. W.D., 11 Cal.3d 192, 113 Cal. Rptr. 206, 210, 520 P.2d 1022, 1026 (1974); 81 C.J.S., Social Security, § 122 at 236; Graham, "Public Assistance: The Right to Receive; The Obligation to Repay," 43 N.Y.U.L. Rev. 451 (1968):
On the other hand, modern recovery statutes, though a logical development of the traditionally grudging approach to welfare, are actually inconsistent with the common-law view that public assistance is charity. At common law, public *129 assistance payments were earmarked exclusively for survival purposes and, once paid, were forgotten. There exists in America today no discernible national pattern of recovery provisions. While there is little decisional authority of real consequence in this area, strong legal and policy attacks can be launched against the recovery provisions existing in most states. [at 496]
The inquiry, therefore, is whether any statute creates an obligation to pay AFDC payments to a parent of a child, but not on behalf of a dependent child. The answer is that such a duty has never explicitly or impliedly been articulated, and that the Legislature has dealt with cognate situations in a variety of ways.
In the case of old age assistance, the director of welfare may compel relatives of the person receiving assistance to provide for his support, or seek reimbursement from the recipient (N.J.S.A. 44:7-19). Significantly, N.J.S.A. 44:7-81(h) provides:
... no lien may be imposed against the property of any individual prior to his death on account of assistance granted or to be granted under the act (except pursuant to the judgment of a court on account of assistance incorrectly paid on behalf of such individual), and that there shall be no adjustment or recovery (except, after the death of such individual and his surviving spouse, if any, from such individual's estate) of any assistance correctly paid on behalf of such individual under this act.
With respect to "Supplementary Assistance" it is explicitly provided that neither a recipient nor his relatives are responsible for repayment. N.J.S.A. 44:7-89. There is no provision for repayment of "General Public Assistance" under N.J.S.A. 44:8-107 et seq.
A number of New Jersey cases have considered the obligation of repayment on the part of a welfare recipient. However, there is no case except Terry v. Harris, 175 N.J. Super. 482 (Law Div. 1980) which enforces an obligation of repayment in the absence of an executed reimbursement agreement.
Falgiatore v. County of Atlantic, 175 N.J. Super. 122 (Ch. Div. 1980); Francis v. Harris, 100 N.J. Super. 313 (Law Div. 1968), aff'd 103 N.J. Super. 440 (App.Div. 1968), certif. den. 53 N.J. 227 (1969), are cases in which reimbursement agreements were obtained. It is significant that in the trial court opinion in Francis, Judge Ackerman noted that New Jersey is among the *130 states which have provided "by statute for reimbursement of ADC payments made to a dependent child out of funds received on claims for personal injuries." 100 N.J. Super. at 320. He said:
As stated above, the recent decision in Essex County Welfare Board v. Hellams, supra, is clearly distinguishable. In that case the Court held that there could be no recovery of ADC payments under N.J.S.A. 44:10-4 out of funds received by a dependent child in settlement of his personal injury claim because, unlike this case, the welfare board had not taken a repayment agreement as provided for in the statute. The Court also held that the welfare board had no right of recovery under the provisions of N.J.S.A. 44:7-19. It seems clear that the Court adopted the reasoning and philosophy of Application of Woods, [32 Misc.2d 745, 222 N.Y.S.2d 903 (Sup.Ct. 1961)] supra, in its construction of the latter statute, which is not involved in this controversy. To the extent that its holding in this regard may be deemed to apply to the construction of N.J.S.A. 44:10-4, this court feels that it should not be followed for the reasons herein set forth. [Id. at 326]
Cf. Essex County Welfare Board v. Hellams, 103 N.J. Super. 438 (App.Div. 1968).
N.J.S.A. 44:7-19 is the old age assistance chapter of the statute, and is inapplicable here.
Terry is distinguishable from the case at bar. In Terry, the welfare recipient failed to disclose the existence of a pending lawsuit. The court reasoned that:
Despite efforts by the county to have the client come forward with this information, Mrs. Terry never responded as she was obligated to do, and based on these facts (by not disclosing the lawsuit on periodic forms and by signing checks) the conclusion is inescapable that the pertinent information was `withheld' by her. It is equally reasonable to assume that upon learning of this pending entitlement the county would have acted either to obtain a signed agreement to repay or would have terminated benefits for Lee. [175 N.J. Super. at 494-495]
The court then relied upon a provision of the administrative code for authority to impose a lien. The provision in question reads:
1. Upon liquidation of a resource for which a valid Agreement to Repay does not exist solely by reason of the applicant client's withholding of information about the matter the CWA (County Welfare Association) shall pursue collection activity as in this section, indicating to those concerned, including the courts, that except for the client's withholding of information, a valid agreement would have existed or the assistance would not have been granted ... (N.J.S.A. 10:81-3.4(e)(1). [Id. at 494]
*131 The case at bar is distinguished from Terry because here there was not only no concealment, but explicit notification of the pendency of the law action without any request on the part of the welfare board for a reimbursement agreement. Additionally, while a decision of a trial court is entitled to respectful consideration by another trial court, it is not binding upon it. My interpretation of the administrative regulations relied upon in Terry is that it authorizes pursuit of collection activity on the part of the welfare board, but that it does not create a lien. In order to reach the result that the welfare board had a lien upon the proceeds of the settlement, the judge in Terry had to come to the conclusion that there was a species of misrepresentation or fraud on the part of the recipient. There is nothing of the kind in this case.
There is provision for repayment under N.J.S.A. 44:10-4, but in Essex County Welfare Board v. Hellams, supra, it was held that the obligation to repay was contingent upon execution by the recipient of a written promise to repay. In Cumberland Cty. Welfare Bd. v. Rodriquez, 144 N.J. Super. 365 (Law Div. 1976), the repayment agreement was carefully scrutinized and limited to its precise terms and enforced only when valid under general principles. Considering the possibility that the welfare board could bring action to recover the money paid, Judge Miller wrote:

N.J.S.A.-44:7-19 authorizes the board to bring actions to `recover any sum of money due for assistance given any person.' There is no provision authorizing prepayment of funds. For purposes of Aid to Dependent Children programs this provision must be read in conjunction with N.J.S.A. 44:10-4 which requires that a valid repayment agreement be signed while the claim is pending. Essex Cty. Welfare Bd. v. Hellams, supra, 103 N.J. Super. at 439-440.
Under Aid to the Working Poor programs, N.J.S.A. 44:13-9 provides that `any assistance received by a recipient shall constitute a debt owed to the State of New Jersey, which debt shall be recoverable by the State of New Jersey or its agents.' As discussed above, this action has not been brought to recover a debt due, a procedure for which statutory authorization exists. There is no statutory authority permitting the welfare board to obtain prepayment for funds not yet disbursed under the Aid to Working Poor program. [at 376]
*132 N.J.S.A. 44:7-19 does authorize a welfare board to bring action for recovery of "any sum of money due for assistance given any person." Emphasis supplied. The first problem in considering this as creating an obligation to repay without specific reimbursement agreement, is the word "due." It does not create a debt; it enables enforcement of an existing obligation. The second is that it is part of the "Old Age and Personal Disability" section of the statute and may be limited to situations arising thereunder.
N.J.S.A. 44:13-9 was repealed by L. 1977, c. 127, § 8, and replaced by N.J.S.A. 44:10-4, the statute now being construed. L. 1985, c. 120 modified N.J.S.A. 44:10-4 by providing that there could be no reimbursement out of the proceeds of a child's injury award, but left untouched the remainder of the statute.
It follows that, in the absence of an executed agreement, where there has been full disclosure of the personal injury action, the welfare board has no claim.
The attorney for plaintiff should draft an appropriate order and submit the same pursuant to the rules.